THE TOWN OF REFUGIO AND OTHERS v. J. W. BYRNE.

If objection to their introduction is made, a party is not entitled to use the depositions taken and filed by his adversary, if he has failed to propound cross interrogatories to the witness.

In an action of trespass to try title, where the court charged the jury that certain acts of the Congress of the Republic (on which the defendants relied as giving them title,) were sufficient to vest in them title superior to the plaintiffs, they cannot complain if the court decline to charge that a paper title was not essential to support their rights, or refuse instructions asked as to the effect of possession to bar the action, or afford the basis for presuming a grant.

Such a charge stated the case too strongly perhaps, for the defendants, if the evidence of their title did not consist wholly in the legislative acts referred to, or in any written muniments of title.

Assuming as the court did, that the title to the town of Refugio, under which the defendants claimed, was the paramount title; to charge the jury that if they could not find what the boundary of the town is, they should find for the plaintiff, was not a submission of the true issue, and ·

was calculated to mislead the jury. It was not, in that state of case, essential that the defendants should ascertain the boundary with exactness, or be able to find with certainty where it was. It was sufficient if the defendants were within the boundary. It was nevertheless .essential to the validity of the title, that the boundary should be capable of being ascertained, at least proximately.

The act of Congress of the Republic, of the 1st of February, 1842, authorizing the commissioner of the general land office to issue to the corporate authorities of the town, "a title to the town tract of the mission of Refugio, on which said town stands," was a confirmation of the title granted in 1834, under the 34th Article of the colonization laws, and the instructions to commissioners.

A formal grant was not contemplated under the above named article and instructions. None other was necessary than that contained in the law which provides for the founding of the towns, and declares that "four square leagues shall be designated for each."

The lands constituted a part of the town by the law of the grant, and may be supposed to have been in the contemplation of the several acts of the Congress of the Republic, which recognize its continued existence; and a municipal town having been in the first instance completely established, it seems such acts of congress were sufficient to preserve its legal existence under the new government; and though it were but an equitable title prior to the act of 1842, the confirmation of it by that act would relate back to its inception, and give it precedence of a title claimed to have been acquired in the intermediate period between that of the original grant and the 1st of February, 1842.

A plea of the statute of limitations by the defendants, in an action of trespass to try title, which sets forth the title under which they claim to have held adversely as title, or color of title, is not such a plea setting forth specially the title on which they rely, as will come within the ruling in the case of Rivers v. Foot, 11 Tex. Rep. And they are therefore not deprived of any defence which is available under a plea of "not guilty."

APPEAL from Victoria. Tried below before the Hon. Fielding Jones.

This suit was brought in the county of Refugio by James W. Byrne, against the corporation of the town of Refugio and several other defendants, for the recovery in an action of trespass to try title of three several tracts of lands. The petition alleged that the defendants claimed the same under a pretended title supposed to be vested in the said town of Refugio.

The defendants pleaded the statute of limitations of three years, and set forth as title, or color of title, from and under the sover-

eignty of the soil, under which they claimed, the title from the government to the town of Refugio, (at the conclusion of the plea disclaiming as to any other land claimed by the plaintiff than that embraced in said title,) and also the plea of "not guilty."

The case was removed by change of venue to Nueces county; the district judge thereof being disqualified to sit, it was removed to the county of Victoria.

The plaintiff introduced in evidence patents to the land described in the petition, dated February 5th, 1842.

The defendants proved by documentary evidence that in the year 1830, James Power, one of the empresarios of Power and Hewitson's colony, petitioned the executive department of Coahuila and Texas, among other things, for permission to found a town out of the four hundred families of which his colony at the mission of Refugio was to be composed, in conformity with the 35th Article of the colonization law. In the year 1831 the executive gave instructions to the political chief of the department of Bexar, designating the mission of Refugio for the town, provided no other spot should be better adapted to the purpose, in conformity with the provisions of Article 34 of the colonization law; providing also for the sale of the town property in the manner prescribed by Art. 2 of decree No. 177, of the congress of Coahuila and Texas, the proceeds whereof to be paid over to the State.

It was proved that in the year 1834 the town tract, containing four leagues, was surveyed in a square form, making the public square of the town the centre. The different lines were described by natural objects, as well as by certain artificial land marks. Lots in the town were also surveyed and titles given by Vidaurri, commissioner of the colony. The ayuntamiento of Refugio, as the colonial town, was established in the summer of 1834, and continued organized until it was broken up by the revolution. Owing to the revolution and the Indians, the settlers who had retreated did not generally return until 1838-9 and '40. By special law, their law business was transacted at Victoria. Under the republic there was no mayor until 1842.

The defendants introduced a colony grant to Anastacio Riojas,

dated in 1834, of one league of land. From the maps of that tract and the town tract, and the calls in the respective titles, it appears that the Riojas tract is bounded on the North by the town tract, and includes one and part of another of the plaintiff's surveys. It was proved that the defendants were included within the bounds of the town tract, except defendant Martin, as to whom the witness was not positive.

There was no formal grant or paper title from the government to the four leagues claimed by the town of Refugio. The titles from Vidaurri were issued to the lots of the town in 1834, formally and in writing.

The court instructed the jury as follows: "If you find that the land in controversy lies without the boundary of the town tract of Refugio, you should find for the plaintiff the land in his petition set forth; or if you cannot find what the boundary of the town is, you should so find.

"But if you believe the land in controversy lies within the boundary of the four league tract of the town of Refugio, you should find for the defendants; for I charge you that the act of the legislature of the republic of Texas of February 1st, 1842, together with other previous acts upon the subject, would vest in the town and those claiming under it a title superior to the plaintiff's."

The defendants asked the court to instruct the jury that no formal or paper title was necessary to be issued by the commissioner of Power and Hewitson's colony, to give title to the town of Refugio to the four leagues. That if the land claimed by the plaintiff has been shown to belong to another than the plaintiff or defendants, the plaintiff cannot recover; and also asked instructions touching the law as to the presumption of a grant to the defendants from ten years possession, which the court refused to give.

The plaintiff took the depositions of a witness, which were placed on file. The defendants had propounded no cross-interrogatories; on the trial they were not offered by the plaintiff, and defendant offered to read them, to which the plaintiff objected because the defendant had obtained no interest in them by filing

cross-interrogatories. The court sustained the objection. The jury returned a verdict for the plaintiff. Judgment was rendered accordingly for the recovery of the land sued for.

*Pryor Lea*, for the appellants.

*Allen & Hale*, for the appellee.

WHEELER, C. J.—The express affirmation by the statute, of the right of a party to use the depositions of the adverse party, when he has filed cross-interrogatories which have been answered, impliedly negatives the right where the party has not propounded cross-interrogatories. (Hart. Dig., Art. 731.) This seems to be the case of an affirmative statute which implies a negative; that is, that the party who has declined or neglected to file cross-interrogatories, shall be deemed not to have an interest in the depositions, and shall not have the right to use them, if the party taking them does not see proper to use them, and objects to the use of them by his adversary; and such has been the construction heretofore given to the statute. (Sayles' Practice, § 393, and cases cited.) The court therefore did not err in excluding the deposition of the witness Pressler.

The court instructed the jury, that the act of the 1st of February, 1842, and other previous acts, were sufficient to vest in the defendants a title superior to the plaintiff's. Under this view of the case, the defendants can not complain that the court declined to charge that a paper title was not essential to support the right of the town; or that the instructions asked as to the effect of possession to bar the action, or afford the basis for presuming a grant, were refused. The defendants could not ask more, upon the question of title, than that the jury should be instructed that theirs was the superior title. The instruction given by the court upon this point embraced, substantially, all that was asked, in terms more decisive of the question for the defendants than their instructions which were refused. It was stating the case too strongly, perhaps, for the defendants, where the evidence of their title did not consist wholly in the legislative

acts referred to, or in written muniments of title.   But of this
they can not complain.

But the court further instructed the jury, that if they could
not find what the boundary of the town was, they should find for
the plaintiff.   This, it is conceived, was not the true issue; and
there is reason to apprehend it may have misled the jury.   Con-
sidering the evidence upon the question of boundary, it can not
be doubted that the charge in question was calculated to have a
controlling effect upon the verdict.   In the terms in which it was
propounded, it was calculated to induce the belief on the part of
the jury that, to warrant a verdict for the defendants, they must
be able to identify the true boundary line of the town—in the
language of the charge, to "find what the boundary of the town
is;" whereas it was not essential that they should ascertain the
boundary with exactness, or be able to find with certainty where
it was.   That was not the question; but it was whether the de-
fendants were within the boundary of the town—assuming, as the
court did, that the title of the town was the paramount title.   It
was essential to the validity of the title, that the boundary should
be capable of being ascertained, at least proximately; and that
may be what was meant by the instruction; but it was not
likely to be so understood by the jury.   We think the charge was
calculated to mislead.   The evidence places it beyond doubt, that
the town tract was surveyed in 1834 by competent authority.
The known centre of the survey, the natural and artificial objects
testified to by the witnesses, and the adjoining surveys calling to
bound upon the town tract, leave little room to doubt that the
boundary of the town is capable of being ascertained with suffi-
cient certainty; and the evidence leaves as little room to doubt
that most of the defendants are within it.   If, as the jury were
instructed, the title of the town was paramount, the verdict was
certainly contrary to the evidence, and a new trial ought to have
been granted.

It is insisted for the appellee, that a new trial was properly
refused, on the ground that the verdict is right upon the law; be-
cause, it is said, the town had no title; and the instructions to

that effect, asked by the plaintiff, ought to have been given, and the same final result thus obtained.

This brings us to consider whether there is evidence of title in the town, proper to be submitted to a jury; for, unless we can affirm that the town has no title, it is the right of the defendants to have the judgment reversed for the error in the charge of the court, and the cause remanded for a new trial.

The act of the 1st of February, 1842, authorizes and requires the commissioner of the general land office to issue to the corporate authorities of the town, "a title to the town tract of the Mission of Refugio, on which said town now stands." If this "town tract" is capable of being identified, it will not be denied that the act was a legislative grant, or confirmation of the title of the town to the land which is the subject of the grant, or confirmation of title. But the act did not take effect until after the plaintiff's right was acquired; and if this act was the origin of the title of the town, the plaintiff's is the elder and superior title. Was the act in question the origin of title? We incline to the opinion that it was not. It is in proof that the town was established by the express authorization of the executive in 1834, with its prescribed limits to include four leagues of land, in conformity with the 34th article of the colonization law, and the instructions to commissioners. It was surveyed, lots were distributed and titles issued to the inhabitants, in conformity to the provisions of the law. (Instructions to Com'rs of Sept., 4, 1827, Art. 11, 16, 17, et seq.) A municipal corporation was elected and organized, and the town completely established as the colonial town of the colony, as contemplated by the laws upon that subject. If it had not the proprietorship of the lands that appertained to it, it was because a paper title, or grant from the government, was necessary to invest it with the property in the land.

In Landry v. Martin, (15 La. R., 1,) the Supreme Court of Louisiana held that the Spanish government recognized verbal as well as written grants to land; and that a verbal grant set off by the king's surveyor passed all the right of the king to the domain, which could not be subsequently granted by any of his governors. But in De Armas v. New Orleans, (5 La., 132,)

Judge Porter expresses the opinion that, by the law of Spain, a grant was necessary to render a place set apart for public use, common property of the city, not subject to future grant by the king; and that the principle extended to the dominions of the crown of Spain in America. (Ib., 202.) However this may have been, the question in the present case, it is conceived, must depend upon the colonization laws, under which the town was founded, and its limits and property assigned. And we find nothing in these laws which seems to contemplate a formal grant to the town of the four leagues which the law declares shall be designated for its site and foundation. (Art. 34, Decree 16.) The provisions of the law embraced in the instructions to commissioners, seem incompatible with the idea of such a grant. They charge the commissioner with the duty of selecting the site, of laying off the town, distributing the lots, and giving to the applicants their titles. (Art. 11 to 19 inclusive.) If a formal grant to the town had been contemplated, the title to the lots, it would seem, should have been made by the corporate authorities of the town, and not by the commissioner of the colony. Yet the law seems to contemplate the making of the titles by the latter, (Art. 19,) and such appears to have been the practice. The inference would seem to be, that a formal grant to the town was not contemplated, and that none other was necessary than that contained in the law, which provides for the founding of the towns, and declares that "four square leagues shall be designated for each;" and it would seem that, when the town was completely established, in the manner prescribed, and its municipal corporation organized, the law operated a dedication, reservation, or grant of the lands which appertained to it, for the purposes of its foundation. We are referred to the action of the commissioner of De Leon's colony, produced in evidence by the plaintiff, to show that in other instances a paper title was extended to the colonial towns. But the paper introduced does not evidence a formal grant of the town lands to the town of Victoria; but only the superintendance of the commissioner in laying off and surveying the town, and his authorization and approval of the survey.

The lands were made appurtenant to the town by the law pro-

viding for its foundation and establishment. They constituted a part of it by the law of the grant, and may be supposed to have been in the contemplation of the several acts of the congress of the republic, which recognize its continued existence. One of these was as early as the 29th of December, 1837, when, it seems from the evidence in this case, the town was nearly depopulated. By another in May, 1838, the town was declared by the new government incorporated; and its continued corporate existence was recognized by several other acts prior to the act of the 1st of February, 1842.

If the town had an incipient or equitable title under the laws of the former government, it would seem that these repeated acts of recognition were sufficient to preserve its legal existence under the new government; and though it were but an equitable title prior to the act of 1842, the confirmation of it by that act would relate back to its inception, and give it precedence of the plaintiff's title.

The decision of the case was made to turn in the court below, upon a question of boundary; and counsel have not argued the question of title as fully as, perhaps, they would otherwise have done, or as would be desirable before expressing a final opinion upon that question. At present it is only necessary to say we are not prepared to affirm that the town has no title; and think proper, therefore, to reverse the judgment and remand the case for a new trial.

The view we have taken of the case renders it unnecessary to consider how far the defendants were entitled to resist a recovery on account of the outstanding title in Anastacio Riojas, or to revise the ruling of the court refusing to give the instructions asked upon that subject. We do not think with the appellee that the defendants, by their pleadings, have precluded themselves from giving in evidence under their plea of not guilty, and relying on their outstanding title; or that the case comes within the rule stated in Rivers v. Foot, (11 Tex. Rep.) The defendants did not plead specially the title of the town as constituting, in itself, the defence relied on in their special plea, but as title or color of title to support the plea of the statute of limitations. Their special

plea was but the plea of the statute; and this it was necessary for them to plead specially, if they would rely upon that defence. By pleading the statute they did not deprive themselves of any defence available under the plea of "not guilty."

The judgment is reversed and the cause remanded.

Reversed and remanded.