MRS. FANNIE V. W. HEARD ET AL v. THE STATE OF TEXAS ET AL.

No. A-1162. Decided July 19, 1947.
Rehearing overruled October 1, 1947.
(204 S. W., 2d Series, 344.)

140

*Hunt & Lawler* and *John F. Heard,* of Houston, *J. B. Robertson* and *Dan Moody* of Austin, for Mrs. Davenport and other heirs of Mrs. Heard, *George E. Shelley,* Guardian ad litem for John F. Heard, Jr., of Austin, *Powell, Wirtz, Rauhut & Gideon,* of Austin, *Blades, Chiles, Moore & Kennerly, Wm. Sears, McGee* and *Fred W. Moore,* all of Houston, for the Houston Oil Company, all petitioners.

*Price Daniel*, Attorney General, *F. D. Brown* and *Ben H. Rice, III*, Assistant Attorneys General, for the State, *Davis, Hall, Clemens & Knight*, and *J. C. Hall*, of San Antonio, *Critz, Kuykendall, Bauknight, Mann & Stevenson*, of Austin, for Town of Refugio, *Sanford, King, Estes & Cantwell*, of Dallas, for intevenor Jack E. Gaines, and *Shank & Stokes*, of Dallas, for W. R. R. Oil Co., all respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

The State of Texas and the Town of Refugio, a municipal corporation created under the laws of Texas brought this suit against Mrs. Fannie V. W. Heard, Houston Oil Company, and others, in trespass to try title to 15.65 acres of land, a part of the bed of Mission River in Refugio County. The W. R. R. Oil Company and Jack E. Gaines, owners of an oil and gas lease on the land sued for, intervened. The defendants claimed title to said land under the Ten-year Statute of Limitation by virtue of the claim acquired by the Town of Refugio under the provisions of Article 5414a, Vernon's Annotated Civil Statutes, commonly referred to as the Small Bill. The trial was before the court without a jury, and judgment was rendered that the plaintiffs take nothing, and that the defendants be quieted in their limitation title to all the land involved. An appeal was taken,

and the Court of Civil Appeals reversed and remanded the cause with instructions, holding that the evidence did not support the judgment of the trial court. 199 S. W. (2d) 191.

The land in suit is within the boundary lines of a four league grant made in 1834 by the State of Coahuila and Texas, Republic of Mexico, and is a part of the bed of Mission River, which traverses the original four league grant. The grant was surveyed for the Town of Refugio in the form of a square, of which the public square was the center. The boundary lines were indicated by natural objects and by certain artificial land marks. Town of Refugio v. Byrne, 25 Texas 193. The Town of Refugio thereafter sold and conveyed most of the land granted. Petitioners Heard et al own a tract within the grant consisting of 600 acres. The Mission River runs almost through the center of this tract. The land in suit, however, is only a part of the bed within the Heard tract, and is the most western 15.65 acres. The eastern 15 or 16 acres are not involved in this suit.

Petitioners do not claim title to this land under a grant or patent. They claim title to the portion of the bed of Mission River involved here solely by limitation. They admit title to the bed of Mission River in the State of Texas prior to March 3, 1929, the effective date of the Small Bill. (Article 5414a.) They admit title in the Town of Refugio subsequent to such date under the provisions of the Small Bill, and that they have no title unless they established one by the Ten-year Statute of Limitation.

The case of Heard v. Town of Refugio, 129 Texas 349, 103 S. W. (2d) 728, involved the title to the bed of Mission River, which flowed through the land granted to the Town of Refugio by the Mexican Government. In that case the history of this grant was exhaustively reviewed by Justice Smedley, speaking for this Court, and it was held that Mission River is a navigable stream and that the title to that portion of the bed of Mission River which lies within the outer boundaries of the four leagues of land surveyed for the Town of Refugio in 1834 did not pass to the town by or under the grant then made, but that such title was acquired and held by the State of Texas. It was also held that only the Town of Refugio and the State of Texas held any interest in the title to the bed of Mission River within the four league grant. If the Town of Refugio acquired any interest in the title to the bed of Mission River, it was under the Small Bill. (Article 5414a.)

The case was remanded to the district court for determination of the rights of the State of Texas and the Town of Refugio in the river bed under the provisions of the Small Bill. Specific instructions to guide the trial court in determining such rights were set out in the opinion. It was ordered that if the State of Texas became a party to the suit and the issue was determined in conformity with the rule announced by this Court, judgment would be rendered *partitioning the entire river bed within the tract* between the State of Texas and the Town of Refugio.

The State of Texas became a party to the suit, and in its pleadings claimed the bed of Mission River within the four league grant. The Town of Refugio likewise claimed the entire river bed. The issue was joined between the State of Texas and the Town of Refugio. In view of the holding of this Court that only the State of Texas and the Town of Refugio had any title, right, or interest in the bed of Mission River within the original grant, all other parties were dismissed from that suit. Thereafter the case was called for trial, and the trial court, without a jury, heard the pleadings and the evidence, including the testimony of P. G. Young, County Surveyor of Refugio County, who testified that the land granted to the Town of Refugio was supposed to contain four leagues or 17,713.6 acres of land; that he had made an office survey of the grant from reliable data available to him, and found that the total acreage within the boundary lines, including the river bed, was 17,740 acres, or an excess of 26.4 acres; that the total acreage in the river bed within the grant was 132.29 acres; and that it was necessary to give to the Town of Refugio 105.89 acres out of the bed to make up its complement of 17,713.6 acres, so that the Town of Refugio would own four-fifths of the river bed and the State one-fifth. The trial court on December 17, 1937, entered judgment that the Town of Refugio held title to four-fifths and the State of Texas held title to one-fifth of the bed of Mission River within the original grant to the Town of Refugio by the Mexican Government. No appeal was taken from that judgment, and it became final.

In this suit respondents alleged that on January 1, 1938, the Town of Refugio owned an undivided four-fifths and the State of Texas an undivided one-fifth of the bed of Mission River within the grant, same being subject to an oil, gas, and mineral lease emanating from respondents, and which mineral lease is now vested in Jack E. Gaines and the W. R. R. Oil Company as assignees.

Petitioners do not assert that they held any title to the bed of Mission River at the time judgment was rendered on December 17, 1937, in Cause No. 1172. They claim that they are not bound by the determination of the title involved in that suit, because they were not parties thereto, and that the judgment entered therein was void. They assert, however, that they hold title to all this land by virtue of the Ten-year Statute of Limitation. The trial court held that the State of Texas held no interest in this land, and entered judgment for petitioners on this issue.

■ Neither the State of Texas nor the Town of Refugio questioned the judgment rendered on December 17, 1937. They accepted that judgment as fixing their rights in the bed of Mission River, and they are now asserting such rights in this suit. Under the ruling of this Court in the case of Heard v. Town of Refugio, supra, the trial court unquestionably had jurisdiction of the subject matter and the parties in that case. The judgment shows on its face that it was rendered after a hearing and upon evidence. If the judgment of the trial court is void it is subject to attack in a collateral proceeding; but if the judgment be merely erroneous, that is not sufficient ground to vitiate it. Martin v. Sheppard et al, 145 Texas 639. 201 S. W. (2d) 810; Commonwealth of Massachusetts v. Davis, 140 Texas 398, 168 S. W. (2d) 216.

The recent case of Martin v. Sheppard et al, supra, involved the validity of a judgment in which Mrs. Martin and her children recovered the sum of $12,500.00 against the State. No appeal was taken from that judgment. Justice Hickman, speaking for the Court, said: "The State takes the position that the judgment of the trial court is void. If that court did not have jurisdiction, both of the parties and of the subject matter of the litigation, the judgment is void and subject to attack in this collateral proceeding. If, on the other hand, the court had jurisdiction of the parties and the subject matter, the judgment is not void, however erroneous it may be."

It is undispuated that petitioners claim only the title held by the Town of Refugio. If they acquired any interest in the river bed by limitation, it was subsequent to the judgment rendered on December 17, 1937. If that judgment is void, the title to the river bed is undetermined, and it is held by both the State of Texas and the Town of Refugio. If the judgment is not void, then the Town of Refugio and the State of Texas are bound by the judgment. We hold that the judgment entered by

the District Court of Refugio County on December 17, 1937. vesting title in the Town of Refugio and the State of Texas, is a valid judgment.

Petitioners' theory is that by the Small Bill the Town of Refugio on March 3, 1929, acquired from the State of Texas all rights and title to the portion of the river bed here involved, and that Mrs. Fannie V. W. Heard, by the use of the river bed in connection with the pasturing of stock on her riparian lands, acquired the fee simple title from the Town of Refugio by adverse possession before this suit was filed on March 6, 1939.

In 1917 Section 59a of Article XVI of the Constitution was adopted. That part of the Constitution specifies certain things as public rights and duties. These rights and duties pertain to the preservation of waters of rivers and streams for irrigation, riparian, and other uses, described therein, as expressed in Article 7466, Vernon's Annotated Civil Statutes, which reads as follows:

"The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams for irrigation, power and all other useful purposes; the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation; the reclamation and drainage of its overflowed lands, and other lands needing drainage; the conservation and development of its forest, water and hydroelectric power; the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties." (Acts 1895, p. 21; G. L., vol. 10, p. 751; Acts 1913, p. 358; Acts 1917, p. 211; Acts 1921, p. 233.)

Furthermore, Article 7467, Vernon's Annotated Civil Statutes (Acts of 1921), provides that the "waters of the ordinary flow and underflow and tides of every flowing river or natural stream, * * * and the storm, flood or rain waters of every river or natural stream, * * * within the State of Texas, are hereby declared to be the property of the State, * * *." The foregoing rights were retained by the Small Bill.

■ The State holds title, under the judgment entered in Cause No. 1172, to one-fifth of the bed of Mission River, and, of course title to that part can not be acquired by limitation. Article 5517, Vernon's Annotated Civil Statutes.

■ The validity of the Small Bill was sustained by this Court in State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1065. That part of the river bed involved here is not used as a street, alley, or public place by the Town of Refugio, and Article 5517, Vernon's Annotated Civil Statutes, does not apply. Articles 5510-5516, Vernon's Annotated Civil Statutes, describe how title to property may be acquired by adverse possession. The courts of this State have consistently announced the rule that to constitute adverse possession sufficient to deprive an owner of legal title to his property by an adverse claimant, such possession must be continuous and uninterrupted for the statutory period, and must be "actual, notorious, distinct and hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." Satterwhite v. Rosser, 61 Texas 166; Evans v. Templeton, 69 Texas 375, 378, 6 S. W. 843; 5 Amer. St. Repts. 71; Hardy v. Bumpstead (Com. App.), 41 S. W. (2d) 226; 76 A. L. R. 1488.

Justice Brown, speaking for this Court, in Nona Mills Co. v. Wright, 101 Texas 14, 102 S. W. 1118, 1121, in discussing the character of possession required to support a title by limitation, said: "To constitute adverse possession, the party occupying the land must in some way appropriate the land for some purpose to which it is adapted. Mere occupancy of land without any evidence of an intention to appropriate it will not support the statute of limitation."

■ The strict rule announced above applies to land not encumbered with the rights of the public or riparian owners. We are here dealing with the bed of a navigable stream, in which the State, the public, and the riparian owners have certain valuable rights, and certainly the rule is no less strict with such rights involved. Those rights have been exhaustively discussed in Motl v. Boyd, 116 Texas 82, 286 S. W. 458; Diversion Lake Club v. Heath, 126 Texas 129, 86 S. W. (2d) 441; and State v. Bradford, 121 Texas 515, 50 S. W. (2d) 1065. The Small Bill has specifically protected those rights. This Court in the Bradford case, in discussing those rights, said:

"The grant does not impair any mineral rights reserved by the state. No excess acreage shall be recognized under this law. Again the state's title to the sand and gravel in the beds of navigable rivers is in no way impaired. The reservation to the state and the public of the waters of streams would, under well-established rules of construction, carry with the reservation all things necessary to the practicable and substantial use of and

enjoyment of the things reserved. It carries with it the power to construct dams or other works upon or across the bed of the river in order that the public might enjoy the rights of irrigation or other use of the waters. The decisions of this state hold that grants for public purposes will be liberally construed so as to fully effectuate such purpose. It is equally true that reservations for public purposes in a grant will be liberally construed so as to give full effect to such reservation, and that the reservation of a named right will necessarily carry with it any use of the property granted necessary to effectuate the reserved right."

The testimony introduced is substantially as follows: From 1891 down to the time of the trial, the Heard land was used for grazing purposes, and the Heard's livestock grazed thereon. It is undisputed that the land in controversy was not separately fenced, but there were fences separating the Heard 600-acre tract from all the surrounding adjoining land. The fences on the east and west sides of the Heard land crossed the stream with "water gaps," and these "water gaps" were so constructed that they would unhook in case of high water. The fences did not touch the land in controversy except on the west end, and the fences on the west side of the Heard land crossed the river with "water gaps" and touched the land in controversy on its west side. From 1904 to the time of the trial there was never a time when somebody did not have cattle running on the land.

Mission River, though navigable in law, was not navigable in fact. It did not prevent the passage of stock to and from the lands of the riparian owners on each side of the stream, and the river without a fence across it would not have prevented the passage of cattle and other livestock up and down the bed of the river. To prevent their cattle from leaving their land, it was necessary for petitioners to erect fences across the stream, as was done, or to erect fences on each side of the river, so as to enclose their land and hold their livestock thereon. If they had erected fences on either side or both sides of the river, they would have thereby deprived themselves of their riparian rights to the use of the river.

The evidence further shows that the Houston Oil Company installed a pipe line across the river bed, which extended from its wells on the north side of the river down to its tank farm on the Rooke lease. It is not shown just how and where the pipe line was installed across the river bed. The Union Producing Company also had a pipe line crossing the river, but

disclaimed any interest in the land. No oil or gas wells were drilled in the river bed, and the pipe lines were used only for the gathering and transportation of oil and gas produced on land outside of the river bed.

■ Under Article 1497 it is provided that an oil company "shall have the right to lay its pipes and pipe lines across and under any * * * stream in this state. * * *." This Article was originally enacted in 1899, and it was enacted in its present form in 1919. It was the law in 1929 when the Small Bill was enacted, which preserved to the public certain rights in the waters of streams. It is not shown whether such pipe line owned by petitioners was operated under Article 1497 or as a private pipe line. However, if the laying of a private pipe line by petitioners gave them any claim to the river bed as against the title held by the Town of Refugio, it would be at most only an easement on the land where the pipe line was laid. To sustain even the claim of an easement on the river bed, the evidence must be clear and positive, and must show that the claimant intended to hold adverse title to the river bed as a right and not as a mere privilege. 15 Tex. Jur., p. 791, Sec. 21.

In testing the sufficiency of the evidence to support the claim of petitioners to the river bed by limitation, it must be kept in mind that under the law this river is a navigable stream, and that the State, the public, and riparian owners have certain rights therein. The State owned title to the river bed prior to the enactment of the Small Bill, and still holds title to one-fifth of the river bed and certain rights therein for the benefit of the public. Those rights have already been described. This river bed was used and occupied when the State owned it prior to the enactment of the Small Bill, and little change, if any, has been made in the use and occupancy thereof since then. Petitioners had a right then, and have the right now, to use and occupy the stream for certain purposes. The Town of Refugio owns title to an undivided four-fifths interest in the river bed, but that does not include the rights in the stream retained by the State for the benefit of the public. The Town of Refugio had no control over the rights held by the State, and they could not be acquired by limitation. Furtheremore, the Town of Refugio could not have fenced off the river bed without interfering with the rights of riparian owners; and the riparian owners, on account of the width and depth of the river and the nature of the land, could not have enclosed their cattle on their lands and fully enjoyed their rights as riparian owners without extending their fences across the river bed. The evidence shows that

Mrs. Heard pastured cattle on her riparian land, and that fences separated her land from that of her neighbors, crossing the river with a "water gap," so that her cattle could be kept on her land and have access to the river. Mrs. Heard was availing herself of the rights given her as riparian owner, and was using the river bed as a convenience and a privilege, and not under a claim of right inconsistent with and hostile to the claim of the Town of Refugio. She was not permitted to obtain title to the river bed by limitation by the use of such riparian rights.

When all the evidence is considered in the most favorable light to petitioners, such evidence fails to meet the rule described in Article 5515, which reads as follows:

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

The Court of Civil Appeals correctly held that the uncontroverted facts as shown by the record would not sustain the judgment of the trial court in vesting title by limitation in petitioners.

The Court of Civil Appeals also held that the survey of the river bed was not made in accordance with the rule announced by this Court in Motl v. Boyd, supra; Diversion Lake Club v. Heath, supra; Heard v. Town of Refugio, supra; and Maufrais v. State, 142 Texas 559, 180 S. W. (2d) 144. For this reason the Court of Civil Appeals reversed and remanded the cause with instructions to the trial court to cause the portion of the river bed involved here to be correctly resurveyed, at the cost of appellants, who are respondents here, in accordance with the rule announced by this Court in the cases above cited. We approve this holding.

■ This Court holds that the judgment of the trial court entered on December 17, 1937, that the Town of Refugio held title to four-fifths and the State of Texas held title to one-fifth of the bed of Mission River, within the original grant to the Town of Refugio by the Mexican Government, is valid; and such title is hereby quieted.

This cause is remanded to the district court with instructions to have the area of the river bed involved here resurveyed in accordance with the rule announced by this Court in the cases above cited, such resurvey to be at the cost of the respondents; and when the proper boundary lines shall have been established

by such resurvey, judgment is to be entered for respondents for their respective interests in the river bed.

Opinion delivered July 19, 1947.

MR. JUSTICE SLATTON, dissenting.

In my opinion the evidence of petitioners is sufficient in law to support the trial court's findings of title under the ten year statute of limitation.

If the Court of Civil Appeals was dissatisfied with the weight or sufficiency of the evidence, it had the power to reverse the trial court's judgment and remand the cause for another trial, but in my opinion it had not the right to render a judgment against the petitioners.

The trial court made, among others, the following findings:

"That the original grant to the Town of Refugio contained, including the river bed, exactly four leagues of land;

"That consequently on March 3, 1929, the effective date of the Relinquishment Act (Small Bill) and under said Act, title to the river bed vested in the town; and,

"That continuously after said March 3, 1929, petitioners had said lands enclosed by good fences under claim of ownership, which was adverse, open, visible, notorious and hostile to said town."

Specifically, the trial court found that on said date the land here involved was fully enclosed in good fences capable of turning cattle, which fences crossed the Mission River and enclosed the same and defendants maintained these fences in good condition for a period of ten consecutive years after March 3, 1929, and prior to the filing of this suit on March 6, 1939, continuously using said land during that period for the grazing of cattle and the Houston Oil Company of Texas as lessee under a mineral lease which covered the bed of said river here involved asserted a determinable fee in said river bed, paying taxes thereon before they became delinquent; that the Town of Refugio therefore on March 3, 1929, had notice of defendants' claim of ownership, which was adverse, open, visible, notorious and hostile to the Town of Refugio during all of said ten year period, and defendants and their privies in title had said property so enclosed in good fences, maintaining same by fence riders and other agents continuously since 1904.

The mineral lease to the Houston Oil Company was executed in 1925 and was duly recorded in the deed records of Refugio County on October 3, 1925. An amended lease was recorded later in October 1928. The evidence shows without dispute that the oil company, prior to and during said ten year period, drilled and operated wells producing oil and gas from the lands included in the lease. During that ten year period the oil company drilled some twenty-four wells under its lease. One of the wells was located probably within one hundred feet of the thread of the stream. The wells were located on the north and to the south of the river, and some of them are situated close enough to make it appear reasonably certain that the wells drained oil from under the bed of the river. The leasehold was operated by the oil company as a unit.

The petitioners did not establish a limitation title to the land or to the minerals against the State, but under the Small Bill the State's title to the bed of the river was relinquished to the Town of Refugio. Thus on the effective date of the Small Bill the continued use and possession of the surface owners and their lessees was notice to the Town of Refugio. In the case of Wingfield v. Smith, 241 S. W. 531, writ refused, the adverse claimant fenced the land involved while the land was owned by the State. After the State of Texas awarded the land to another, the adverse claimant continued to claim the enclosed land for a period of more than ten years after the award of the State. The court used the following language in disposing of the awardee's claim:

"It is next contended that, appellee having placed the fence on the land while it was owned by the state, he acquired no right or title in the fence, and when the land was awarded by the state to appellant the fence became his property, and its further use by appellant for inclosing the land in controversy would not give him exclusive possession of the land north of the fence, because the existence of the fence on the land would not give appellant notice that the land north of the fence was inclosed with other lands of appellee and was held and claimed by him.

"It seems to us that to state this contention makes its unsoundness obvious. Of course, the title to the fence passed to appellant with the land; but it continued to inclose the land on its north side with the other land of appellee, and when appellant allowed this inclosure to continue and appellee to have the exclusive use and enjoyment of the land, claiming it as his

own for more than 10 years after it was awarded to appellant by the state, such possession of appellee ripened into title. Appellant was bound to take notice of the use and possession of the land by appellee."

It is readily seen that the same principle is applicable to the Town of Refugio. We may paraphrase the expression, the Town of Refugio was bound to take notice of the use and possession of the land by the surface owners and their lessee, the oil company.

Moreover, the fencing of an alley in an incorporated town has been held to be notice to the county of an adverse limitation claim. Guadalupe County v. Poth, 163 S. W. 1050.

It is believed that the use of the land by the oil company under its lease, which was of record and in which the river bed was included within the lease; the acts of the oil company in drilling oil wells, the running of pipe lines, and of ways over and across the thread of the stream, show an assertion of ownership sufficient to notify the world of its adverse claim. That oil wells were not drilled in the river bed is immaterial when the adjacent wells to the river were close enough to drain oil from under the stream, and particularly is this true where, as here, the entire lease of the oil company was operated as a unit.

That title was obtained under adverse possession under the authoritative decisions in this State is clearly shown from the following authorities: Jones v. Siler, 129 Texas 18, 100 S. W. (2d) 352; Kilpatrick v. Gulf Production Co., 139 S. W. (2d) 653; Laird v. Gulf Production Co., 139 S. W. (2d) 653; Laird v. Gulf Production Co., 64 S. W. (2d) 1080; Leverett v. Leverett, 59 S. W. (2d) 252; Broughton v. Humble Oil & Refining Co., 105 S. W. (2d) 480; Crawford v. Humble Oil & Refining Co., 150 S. W. (2d) 849.

The titles so acquired do not militate against the navigability of Mission River; nor do they preclude the ordinary riparian rights of an owner of uplands contiguous to a navigable stream. The primary and dominant purpose of the Small Bill was to relinquish unto the citizen the minerals under the beds of streams like the Mission River where the citizen had been awarded a specific number of acres and it required the acreage contained in the bed of the streams to complete the acreage awarded to him.

For the reasons stated, I respectfully enter my dissent to a contrary holding of the majority.

Opinion delivered July 19, 1947.

Associate Justices Brewster and Folley join in this dissent.