The STATE of Texas, Appellant,

v.

CITY OF VICTORIA, Appellee.

No. 15863.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 3, 1958.

Rehearing Denied Jan. 31, 1958.

---◆---

Will Wilson, Atty. Gen., James H. Rogers, Asst. Atty. Gen., and J. Arthur Sandlin, Asst. Atty. Gen., for appellant.

W. B. Mallette, Victoria, Guittard & Henderson, and Frank Guittard, Victoria, for appellee.

MASSEY, Chief Justice.

Suit in the trial court was prosecuted in the form of trespass to try title to real estate by the City of Victoria against the State of Texas. Authority to bring and prosecute the suit was received through appropriate action of the State's Legislature.

The property in controversy in the suit was that part of the river bed of the Guadalupe River claimed by the City as result of the enactment of Vernon's Ann.Tex.St. Art. 5414a, commonly known and hereinafter referred to as the Small Bill. It was the contention of the City that since it actually received less than four square leagues of land pursuant to an original grant made prior to the Texas Revolution of 1836 of that amount and area, since the river in question was so situated with reference to the grant that boundaries of the grant lay across the same, and since an area of land in excess of the area underlyng the river plus the balance of the area intended to be conveyed by the grant (and lying on each side of the river) was intended to have been included in the original survey, it had received title to the river bed by the aforesaid Small Bill. If the City was correct in its assertions of fact, it is settled that its claim is supported by the law and it is entitled to the number of acres of river bed sufficient to supply the deficiency in the number of acres necessary to make four leagues of land, but limited to that part of the river bed lying within the bounds of the survey incident to the grant. See State v. Bradford, 1932, 121 Tex. 515, 50 S.W.2d 1065; Heard v. Town of Refugio, 1937, 129 Tex. 349, 103 S.W.2d 728; Heard v. State, 1947, 146 Tex. 139, 204 S.W.2d 344; Mitchell v. Town of Refugio, Tex. Civ.App. San Antonio, 1954, 265 S.W.2d 261, error refused.

After trial before the court without intervention of a jury, judgment was entered in behalf of the City and against the State. The State appealed.

Judgment is affirmed.

As the State is frank to admit, the decision of this case turns upon the question of the length of the vara. What is commonly accepted as the length of the vara at the present time is equivalent to 33⅓ inches. But this has not always been true. It is the contention of the State that the length proper to be taken in the determination of questions in this case should be slightly less than 33 inches, or in exact measurement 32.99206 inches.

To clarify the reader as to the reason for the importance of this matter, suffice to say that in this particular case proof demonstrated that if the vara be taken at slightly less than 33 inches in accordance with the State's contentions, the grant received by the City was sufficient to amount to four leagues of land and therefore the City received no benefit from the Small Bill. On the other hand, if for purposes of the City's grant the vara should be considered to have been 33⅓ inches as contended for by the City, it not only would receive the benefits conferred by the Small Bill but would also be entitled to the entire bed of the river lying within the survey made in connection with the grant. This circumstance resulted by reason of the considerable size of the total area of

land. One-third inch amounts to little for a short distance, but can become rather important when multiplied many times in the computation of a great distance. When squared for the purposes of computing an area to be encompassed, the longer vara may result in a grantee receiving many more acres than he would have received had the shorter vara been used in measuring his grant. And this may become important, as it has in the instant case, where oil development in the vicinity proves land values for mineral purposes.

Though the principles of law regulating rights of the sovereign and those cities and towns of this state affected by the Small Bill are well settled (see the Refugio cases), there seems to have been little antecedent authority to guide us where the question is to turn upon the proper "vara" length to be used for purposes of ascertaining the size of land grants.

■■■ In the instant case, a resurvey of the original grant to the City of Victoria was made pursuant to order of the court, with the surveyor appointed directed to resurvey the grant. This entailed a "following of the 'tracks' of the original surveyor." The evidence adduced upon the trial as the result of this resurvey warranted the conclusion that the 33⅓ inch vara was used by the original surveyor. There was other evidence adduced in connection with surveys of lots and blocks—within the settlement comprising the town proper of old Victoria—made before the original survey was made of the grant in controversy. From evidence bearing upon these prior surveys the conclusion was warranted that the 33⅓ inch vara was used in their making. There was also evidence warranting a conclusion that the earlier surveys were made by James Kerr, who surveyed the original grant. There was no evidence which warranted a conclusion that the shorter vara was used, nor that the 33 inch (or slightly less) vara was ever used in colonial Texas. There are no findings of fact or conclusions of law in the record.

and if necessary to our disposition we will of course treat any necessary finding as though it had been made in a manner which would support the judgment entered.

There are three cases in which the 33⅓ inch vara has been held applicable to Texas colonial grants and we have been cited to no case in which the vara length contended for by the State has ever been declared applicable to a Texas survey, either in colonial times or since. Without commenting upon the matters at issue in the three cases, we cite them: United States v. Perot, 1878, 98 U.S. 428, 25 L.Ed. 251; Harris v. O'Connor, Tex.Civ.App. El Paso, 1944, 185 S.W. 2d 993, 1012, writ ref., n. r. e.; and Heard v. Town of Refugio, supra. With regard to the case last cited, the comparison of the long and short vara was not made, but an analysis leads us to the conclusion that when the Supreme Court used the term "league" it meant 4428.4 acres of land, which area is arrived at through the use of the 33⅓ inch vara, "vara" being the term of measurement involved in the grant with which the opinion dealt. See page 734 of the opinion in 103 S.W.2d. In the retrial of the case for purposes of ascertaining an amount of acreage and "league" area, the State accepted and did not appeal from a judgment based upon a vara length of 33⅓ inches. See Heard v. State, supra, at page 346 of 204 S.W.2d.

It is to be observed in the Decree of 4 Sept., 1827, "Instructions to the Commissioner," by the Executive Department of the State of Coahuila and Texas for the Republic of Mexico, duties were prescribed relative to colonization in Texas (including the De Leon colony in which Victoria was located). The surveyor who should run the boundaries of any lands granted was to be appointed and function under the responsibility of the commissioner. Furthermore, it was made the obligation of the commissioner to take care that the portions of land granted to colonists be measured with accuracy, without permitting any one to take more land than prescribed by law. Personal responsibility was imposed upon

the commissioner for any default leading to the grant of more land than was so prescribed, a situation conducive to a restriction on the sizes of grants surveyed by surveyors appointed by and responsible to the Commissioner who executed the grant. If the Commissioner who executed the grant here in question was bound to the shorter "vara" he could have been held personally responsible for some 292 acres of excess of of land conveyed. It seems plain that there was no provision by which any excess of land conveyed pursuant to a grant or occasioned by reason of errors in any survey delineating the boundaries of the land granted would be either void or forfeited. The only provision relative thereto which we have been able to find relates to the commissioner's personal accountability in such instances. This decree is to be found in the authorities collated in the case of Harris v. O'Connor, supra.

■ For purposes of this case, it appears that the trial court was entitled to presume that 33⅓ inches was the proper length of the vara and was the basis of measurement of the original Town of Victoria. This done, the burden was cast upon the State as the contestant to establish that the lesser length was proper at the time of the grant and was actually used in the survey thereof.

Subsequent to the grant, the Texas Revolution took place and was successful. Afterward (in 1841) the congress of the Republic of Texas confirmed the grant which had been made before the Revolution, and patent was issued pursuant to the confirmation with recognition of Surveyor Kerr's field notes. An abbreviation thereof was filed with the land office. In the article of confirmation (Art. 1133, Sayles' Early Laws of Texas, Vol. 1, p. 489), the "concession of four leagues of land" having been made to Martin De Leon for the purposes of founding the town (Victoria) was acknowledged by the officials of the Republic of Texas. After the recitation that the "said four leagues of land" had been

surveyed, the article of confirmation continued, " * * * the title to the four leagues * * * is hereby ratified and confirmed; and the said four leagues of land * * * are hereby acknowledged and declared to be the property of the present corporation of the town of Victoria, and their successors in office, in trust, forever for the use and benefit of the citizens of said town." The article of confirmation further ratified and confirmed prior sales of town and outlots within the limits of the Victoria town tract, as to some of which the evidence introduced (additional to any presumption) was of such nature to justify the conclusion that the 33⅓ inch vara was used in their surveys. In conclusion, the article of confirmation authorized and required that the Commissioner of the General Land Office recognize as good and valid the copy of the field notes of the town tract of the town of Victoria by James Kerr and directed the Commissioner to issue a patent to "said four leagues of land."

At time of the aforesaid confirmation, the length of the vara in Texas was officially 33⅓ inches in length. It was on January 27, 1838, that the young Republic, through the Commissioner of its Land Office, promulgated a rule relative to and ever afterward followed for surveys to state land made for the Land Office when the County Surveyor in San Patricio County was instructed to use the 33⅓ inch vara as a unit of measure. Texas Bar Journal, April, 1941, p. 179, article by Major P. G. McElwee; The Spanish Archives of the General Land Office of Texas, Ch. V, "The Texas Vara," by Virginia Taylor, former translator for the Land Office.

■■ In 1919, Art. 5730, V.A.T.S., relative to legal standards of measure, was enacted, in which it was prescribed that the vara was statutorily standardized at 33⅓ inches. The Small Bill spoke with relation to acres of land when it was enacted in 1929, at which time Art. 5730 was in full force and effect. The acreage calculable in

a league of land by use of the 33⅓ inch vara is materially different from the acreage calculable when the shorter vara is used. We are of the opinion that for purposes of measuring area in a test of application of this Bill the vara as standardized by Art. 5730 should be used whenever to do such would not clearly be contrary to the length of a unit denominated "vara" in any survey by a surveyor of land in Texas. In this case, such a test shows the Victoria survey to have been in accord with the 33⅓ inch vara.

It would seem remiss in this opinion to fail to note the fact that the attorneys for the parties have gone to great effort in a labor of love beyond the obligations incumbent upon counsel in ordinary litigation. The evidence thereof, apparent in the record and briefs which will ultimately become a permanent record in either this court or the Supreme Court, encompasses a veritable storehouse of valuable information bearing upon the question at hand.

In a reply brief the City points out the analogies to be noticed in this case and those relating to similar questions in the cases involving Refugio. These are to be noticed as follows: (1) Both towns were organized under the same colonization laws and decrees at about the same time. The survey for both was made in 1834. (2) Both became entitled to a pueblo grant of four square leagues of land, not necessarily in a perfect square. (3) A river passes across the outside boundaries of each grant and through each grant and therefore each grant is one "lying across" a watercourse as contemplated by the provisions of the Small Bill. (4) In each the Texas Congress confirmed the grant. (5) In each the 33⅓ inch vara was either actually used in the property survey or the circumstances were such that it would be a proper finding and conclusion that such was the true measure of the "vara" used. (6) Each grant has a deficiency in its acreage, not counting the river, when the original surveys are checked and tested by use of the 33⅓ inch vara or when checked as to acreage by following the original surveyor's tracks.

 Because of the foregoing, the City insists that it, like Refugio, should be held to have come within and under the provisions of the Small Bill and to have received title to enough area of the bed of the Guadalupe River within the boundary lines of the original James Kerr Survey to amount to 17,713.6 acres of land. In the instant case this would mean that Victoria was entitled to all the river bed within such boundaries for there would still remain an acreage shortage. We agree with this contention. Further, any question of whether the City has parted with any part of the title to the river bed, received in view of the Small Bill, is not involved in this case in view of the state of the pleadings and evidence at time of the trial.

Judgement is affirmed.