

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 24, 1962

Honorable D. Brooks Cofer, Jr.
District Attorney
Brazos County
Bryan, Texas

Opinion No. WW-1458

Re: Construction of Articles
4026 and 4028, Vernon's
Civil Statutes, concern-
ing in which stream or
bed of the Navasota River
the public has the right
to fish.

Dear Mr. Cofer:

Your letter states the following facts:

"There is growing conflict between
landowners along the Navasota River and
the public desiring to fish in the waters
of the stream. This river forms the
entire eastern boundary of Brazos County,
but due to its nature basically changes
its course and bed quite often, there
being no clearly defined channel as is
the case of the Brazos River or others
which have a constant flowing stream in
drouth or otherwise.

"In one location in the present case
the landowner since 1938 was deeded a
tract of some 190 acres, which land was
described by metes and bounds as from the
west bank of the 'New' Navasota River to
the west bank of the Old Navasota River,
meaning the real or established channel
of the river which is the boundary be-
tween Grimes and Brazos Counties. Both
the beds at this time have water in them,
but the new river bed is the more pro-
nounced stream of flow; in time of overflow
both beds, as well as others are flowing.
For your information the 'new' river men-
tioned is located west of the old river
in Brazos County."

We understand that the land in question is part of an original grant from the State of Texas made in 1849 and that the beds of both streams are an average of 30 feet wide from the mouth up to the point in question. We have assumed that the change in the river's course was an avulsive (sudden) one, as this is usually the case in such circumstances.

You ask the following question:

"In the light of Art. 4026 R.C.S., and also Art. 4028, in which stream or bed as the case may be does the public have a right to fish in, in accordance with the rules and regulations published by the Game and Fish Commission?"

Article 4026, V.C.S., states, in part:

"All fish and other aquatic animal life contained in the fresh water rivers, creeks and streams and in lakes or sloughs subject to overflow from rivers or other streams within the borders of this State are hereby declared to be the property of the people of this State. All of the public rivers, bayous, lagoons, creeks, lakes . . . in this State . . . together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the State of Texas, except in so far as the State shall permit the use of said waters and bottoms or permit the taking of the products of such bottoms and waters. . . ."

Article 4028, Vernon's Civil Statutes, cited in your letter does not seem pertinent to this question as it deals with rights of riparians along creeks, bayous, lakes or coves to gather, plant or sow oysters. This statute does not seek to bestow exclusive fishing rights on riparians other than as there specified with regard to oysters. We do not understand that any oyster rights are involved in this question.

Concerning grants made since the effective date of the Act of 1837 (Article 5302, V.C.S.), if the average width of a river or stream from its mouth up to the point in question

is 30 feet or more, the stream is considered navigable in law, whether or not actually navigable in fact, Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.2d 441 (1935), and the State is held to be the owner of the bed. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438 (1932). Maufrais v. State, 142 Tex. 559, 180 S.W.2d 144 (1944). See also Attorney General's Opinions Nos. S-208 (1956) and O-156 (1939).

The Act of 1840 (Article 1, V.C.S.) adopted:

". . . so far as it is not inconsis-
tent with the constitution and laws of
this State . . ."

the common law of England as the rule of decision unless altered or repealed by the Legislature. Questions concerning the applicability of common law rules as they apply to Texas water law have long vexed the courts. This opinion attempts to specify wherever certain rules pertain only to grants made after the above statute became effective.

The "gradient boundary" established by Colonel Stiles' technique, as described by him in 30 Texas Law Review 305, has been held to be the dividing line between public river beds and private riparian lands. Oklahoma v. Texas, 265 U.S. 493 (1924); State v. Heard, 199 S.W.2d 191 (Civ.App. 1946), affirmed, 146 Tex. 139, 204 S.W.2d 344 (1947); Diversion Lake Club v. Heath, supra. The Diversion Lake Club case, supra, at 86 S.W.2d 447 held that as to grants made after Article 1, V.C.S., became effective, bordering or crossing statutorily navigable streams, the public, with certain emergency exceptions, could not make use of any riparian land beyond this "gradient boundary" for fishing; the "gradient boundary" was there said to be a gradient of the flowing water located midway between the lower level of the flowing water that just reaches the cut bank and the higher level of it that just does not overtop the cut bank. The cut banks are defined as the water-washed and relatively permanent elevations or acclivities which ordinarily serve to separate the waters from the adjacent upland, whether valley or hill, and to preserve the course of the stream. Oklahoma v. Texas, 261 U.S. 340 (1923); Motl v. Boyd, 116 Tex. 82, 286 S.W. 458 (1926); Diversion Lake Club v. Heath, supra.

With respect to the title to the beds after an avulsive change of the river's course in which the river actually abandons its old bed and makes a new bed, the leading case in Texas is Manry v. Robison, supra. If the river has made a new bed without abandoning the old bed so that there are two regularly flowing channels, we must examine Maufrais v. State, supra, and State v. Janes Gravel Co., 175 S.W.2d 739 (Civ.App. 1943), partially affirmed and partially reversed in the Maufrais case, supra, to determine the ownership of the beds. Manry v. Robison, supra, holds that the State acquires title to the new bed, and the riparian owners on each side of the avulsively abandoned bed of a stream above tidewater acquire title to the abandoned bed. Unfortunately the court in the Manry case expressly left open the question of fishing rights. It is well settled, of course, that where a stream which serves as a boundary suddenly abandons its old bed and forms a new one, the boundary line as between riparian land owners remains unchanged. Ross v. Green, 135 Tex. 103, 107, 139 S.W.2d 565, 566 (1940); Maufrais v. State, supra.

If, however, the river, in making the new stream does not abandon the old bed and two streams customarily now flow with riparian land cut off between them, Maufrais v. State, supra, and State v. Janes Gravel Co., supra, hold that the State acquires title to the new stream and bed without losing title to the old stream and bed, but that the owner of the land between the two beds retains his title in such land. See also City and County of Dallas Levee Improvement District v. Carroll, 263 S.W.2d 307, 311 (Civ.App. 1953, error ref. n.r.e.) for a holding that where it is clearly established that the old river bed has not been abandoned, the State retains title thereto.

The Legislature has declared by statute that the waters of every Texas flowing river or natural stream and of all lakes, bays or arms of the Gulf of Mexico are the property of the State. Art. 7467, Vernon's Civil Statutes. Article 4026, Vernon's Civil Statutes, partially quoted supra, extends this public ownership to the fish and other aquatic animal life of fresh water rivers, creeks and streams and lakes or sloughs subject to the overflow from Texas rivers or streams. Such ownership of waters and fish has been held to be in trust for the people of the State. Goldsmith & Powell v. State, 159 S.W.2d 534 (Civ.App. 1942, error ref.). Article 4028, Vernon's Civil Statutes, places a limitation on Art. 4026 with regard to oysters, as discussed above.

The leading case concerning fishing rights is the Diversion Lake Club case, supra. In that case, the Supreme Court left the question of public fishing rights in waters over private lands somewhat unclear with two varying holdings. On the one hand, the court held, at 86 S.W.2d 443, that the general rule is that the fishing rights, whether exclusively in the land owners bordering the stream or in the public, are determined by the ownership of the bed. On the other hand, the court held, at 86 S.W.2d 446, that the public could fish in the waters over the private lands involved in that case because the waters were public. Citing the first of these two holdings, the court, in Taylor Fishing Club v. Hammett, 88 S.W.2d 127 (Civ.App. 1935, error dism.), held that a fisherman had no right to fish without permission of the riparian owner in a non-navigable lake because the bed belonged to the riparian owner, and thus he had exclusive fishing rights. In the light of the holding in Manry v. Robison, supra, that the State did not retain ownership in an abandoned river bed merely because it was covered by still water, the language of Article 5302 implies that reference is there made to active rivers or streams, and not to those which have been abandoned. If the old bed of the Navasota River has been avulsively abandoned in favor of the new one, thus legally transferring the title in the old bed to the land owners riparian thereto, our fact situation may be distinguished in this instance from that in the Diversion Lake Club case, supra, with regard to whether the public may fish in public waters over private lands. Diversion Lake which was there formed was formed by a man-made dam built upon public authority, and the river was still flowing; whereas the river in our case has made a natural, avulsive change, and, if the water, in the old bed is still water and only flows in times of flooding, it could not be said to be a flowing public river anymore under the test of Manry v. Robison, supra.

The cases of Reed v. State, 175 S.W.2d 473 (Civ.App. 1943) and Smith v. Godart, 295 S.W. 211 (Civ.App. 1927), held that the public may not cross private lands, without the land owners' permission, to get to streams in which the public has a right to fish. Also see Art. 1377b, Vernon's Penal Code. Compare, however, the holding in Attorney General's Opinion No. S-208 (1956), that the public could walk down the dry or submerged bed of a river which is privately owned by virtue

of the Small Bill (Art. 5414a, V.C.S.) for the purpose of seining and fishing in water holes in the bed of the river, even though the river passed through fenced land with water gaps at the entry and exit points, without violation of Article 1377, Vernon's Penal Code, which was the predecessor of Article 1377b.

In the event a land owner abutting the river is claiming title to the river bed by virtue of Article 5414a, Vernon's Civil Statutes, it should be noted that part of this statute states, ". . . nothing in this act contained shall impair the rights of the general public and the State in the waters of streams. . . ." See also State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1076 (1932). A similar provision is found in Article 5414a-1, Vernon's Civil Statutes.

Thus, we answer your question if there are now two ordinarily flowing "navigable" (under Art. 5302) streams where there previously existed only one before, unless expressly and legally granted by the State to the abutting land owners, the State owns both beds and streams and the public has the right to fish in both streams, but may not cross private lands in order to reach such streams without permission of the land owners; nor may the public as to the premises in question, cross the "gradient boundary," determined by the Stiles method, between such grant and the stream. If the navigable river has actually abandoned the old bed in favor of the new one, leaving in the old bed only still water such as that in a fresh water lake with only the new navigable stream flowing except in times of heavy rainfall, then the State no longer owns title to the abandoned bed, but now owns title to the newly formed bed. The land owner who formerly owned the title to the land now constituting the new bed thus would be deprived of his ownership from the "gradient boundary" on one side of the new bed to that on the other side thereof, the land owners riparian to or abutting the old abandoned stream each acquiring title to the abandoned bed. The public would thus no longer have the right to fish in the old stream bed unless the navigable river again changed its course and returned to this abandoned bed.

## SUMMARY

If a navigable river avulsively abandons its old bed for a new one, the public fishing rights follow the newly made stream bed and no longer attach to the old. If, however, the navigable river makes a new stream and bed without abandoning the old one, the public's fishing rights apply to each.

Yours very truly,

WILL WILSON
Attorney General of Texas

By ~~Thomas H. Peterson~~
Thomas H. Peterson
Assistant

THP:afg

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Arthur Sandlin
Elmer McVey
Al Pruett

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore