EDNA MAE BLAYLOCK ET AL, Petitioners

V.

CLARA RISER ET AL, Respondents

No. A-8614. Decided February 21, 1962

354 S.W. 2d 134

*Odeneal & Odeneal,* Dallas, for petitioners.

*Clifford S. Dillard,* Dallas, for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

In a former suit, a piece of property was condemned in the county court of Dallas County for a public improvement. While that court had the power to allocate the moneys paid for the property, it had no power to determine who owned the land. It is here claimed that the judgment of the county court, in the condemnation proceeding, is void because that court *did* adjudicate the title to the property. The trial court entered summary judgment upholding the former decree of the county court. That judgment was affirmed by the Dallas Court of Civil Appeals. 348 S.W. 2d 217.

Fred and Willie Mae Riser, who were husband and wife, purchased the property in question on June 13, 1923. The price was $1,000. A cash payment of $10 was made. It is presumed that the purchase was made for the community estate of Fred and Willie Mae and that the down payment was made with community funds. Fred and Willie Mae had two daughters, Edna Mae Blaylock and Almeda Anderson. The daughters brought this present suit as heirs of their mother and father.

A few days after the property was purchased, the mother, Willie Mae Riser, died. The father, Fred, continued to make payments on the property. He made payments totaling $240 before he remarried.

On October 26, 1927, Fred married Clara. From their community funds, Fred and Clara thereafter paid $750, the balance owed on the property.

Fred and Clara had one child, a daughter named Shirley Jean. Fred died intestate in April of 1954. At that time, Clara, his surviving wife, and Shirley Jean were living on the property and claiming it to be homestead.

The property was condemned in 1957. It had been purchased for $1,000 in the manner set out above; and the amount allocated for it in the condemnation was $8,550. There was no dispute over the power to condemn the property or the amount paid for it. The dispute arose over the division of the proceeds. That, in turn, evoked a dispute as to who owned the property. On one side were Edna Mae Blaylock and Almeda Anderson, the daugh-

ters of Fred Riser and his first wife, Willie Mae. On the other side were the second wife, Clara, and the child of the second marriage, Shirley Jean Riser, a minor.

In the condemnation proceedings in 1957, the daughters of the first marriage (Edna Mae Blaylock and Almeda Anderson) contended that the title to the property vested in their parents, Willie Mae and Fred Riser, at the time it was purchased; that it was the community property of that marriage; and that those making payments thereafter had equitable rights for reimbursement for the payments made.[1] In the alternative, the daughters of the first marriage prayed for an award of one-half of the proceeds which were in the registry of the court.

The surviving widow, Clara, and the daughter of the second marriage, Shirley Jean, on the other hand, contended that only $10 of the $1,000 purchase price had been paid from the community of the first marriage. That is 1%. They argued that the interest of the first wife, Willie Mae, was ½ of 1%, or $5.00. That being true, it was their contention that this was all that her daughters should receive. They wanted the balance invested in a new homestead for the widow, Clara, and for Shirley Jean.

The county court, in the first proceeding in September of 1957, found that 1% [$10] of the purchase price had been paid by the community of the first marriage; that 24% [$240] had been paid from the separate property of Fred Riser after Willie Mae's death; and that during the marriage of Fred and Clara (the second wife), "$750 was paid on the condemned premises, or 75% of the total purchase price, *and which the Court now finds to be the community estate of Fred Riser and Clara Riser.*" (Emphasis ours.)

The court gave the daughters of the former marriage ½ of 1% of $8,550, or $42.75. The court found that Clara, the second wife, was entitled to 37½% *"which is her separate property* and she has a homestead interest in all of said proceeds"

---

1. It appears from the opinion of the Court of Civil Appeals in this case that the pleadings in the former trial were furnished to the trial court by agreement. 348 S.W. 2d at 219. From the brief of Clara Riser et al. in the Court of Civil Appeals in this case it is stated: "The lower court, by agreement, was also furnished the record in Cause No. 15,467 (the former case) which it considered. Appellants refer this court to the record in the earlier cause. Appellees join in such reference." Thus counsel for all parties treated the former pleadings as being before the courts in this case. Exercising our power under Rule 379, Texas Rules of Civil Procedure, we directed the clerk of the court below, the Court of Civil Appeals, to send these papers to us. He did so.

except the $42.75 set aside to the daughters by the former marriage. (Emphasis ours.)

The county court entered two orders at later dates setting aside all of the proceeds except the $42.75 as homestead and affirming the purchase of another homestead for Clara and Shirley Jean.

Counsel for the daughters by the former marriage filed a motion for new trial. Error was claimed in failing to award them one-half of the entire proceeds (instead of ½ of 1%), because the land was community property of their mother and father, and under the laws of descent and distribution the title to one-half of it therefore vested in them upon their mother's death. In another pleading, the daughters asked the court to fix with certainty their interests in the homestead purchased for the surviving widow.

These daughters attempted to appeal from the judgment of the county court. But their appeal was not filed in time and was dismissed by the Court of Civil Appeals. The order is set out in 348 S.W. 2d at 218.

Thereafter the daughters brought this suit to set aside the previous order of the county court on the ground that the county court had adjudicated the title to the land; that this was beyond the power of the county court; that the funds were allocated in accordance with what the court determined the title to be; and that the judgment was therefore void. The surviving widow and her child answered with a general denial and a plea that the former judgment was res adjudicata. They filed a motion for summary judgment on that ground. And, as stated, the motion was sustained. We granted writ of error on the point that it was error for the trial court to have entered the summary judgment.

■ Sections 8 and 16 of Article 5 of the Texas Constitution make it plain that county courts are without power to try title to land and that this subject matter is exclusively within the jurisdiction of the district court. *Hein v. De Busk*, 277 S.W. 1053 (Texas Comm. App. 1925) ; *Thompson v. Janes*, 151 Texas 495, 251 S.W. 2d 953 (1952).

■ When counsel for the defendants in this case, the surviving widow and her daughter, moved for summary judgment, it was their burden to prove, as a matter of law, that the former judg-

ment was not void; that it did not adjudicate title to real property; and that it was therefore res adjudicata of this issue in this case. Rule 166-A, Texas Rules of Civil Procedure; *Tigner v. First National Bank of Angleton*, 153 Texas 69, 264 S.W. 2d 85 (1954); *Gulbenkian v. Penn*, 151 Texas 412, 252 S.W. 2d 929 (1952).

■ The pleadings in the condemnation suit indicated that it was an adversary proceeding. One side claimed that the title was in the community of the first marriage and that the daughters of the first marriage were therefore entitled to at least a half of the proceeds. The other side claimed the property to be the community property of the second marriage and that the children of the first marriage had an interest of only ½ of 1%. The court adopted the latter view in its judgment. Where an issue of title is raised in a condemnation proceeding, the county court is without jurisdiction to try such a dispute. *Thompson v. Janes*, cited just above. And see the reasoning of the courts in the recent Texas Court of Civil Appeals opinion in *Casey v. State*, 331 S.W. 2d 950 (1959, no writ), and *Gandy v. State*, 319 S.W. 2d 375 (1958, no writ).

When counsel for the surviving widow moved for summary judgment in *this* case, the matters before the trial court were the pleadings in *this* case (wherein the plaintiffs asserted that the county court in the first trial *did* adjudicate title), a transcript containing a part of the pleadings and orders in the condemnation case, and the judgment in the condemnation case. Under that state of the record, the movant for the summary judgment did not establish as a matter of law that the county court in the condemnation case did not adjudicate title to land. The burden was on the movant to establish this to sustain his motion. We therefore hold that the trial court erred in granting this motion for summary judgment.

■ As previously stated, there is no dispute here as to the power of the City of Dallas to condemn the property or the amount paid by it for the property. The City is not a party to these proceedings, and its interests will not be affected. Its interests are clearly severable. Compare *Hunt v. Ramsey*, Texas 345 S.W. 2d 260 (1961). A judgment may be void as to a severable portion over which the court has no jurisdiction and valid as to the portion remaining over which it does have jurisdiction. *Cooksey v. Jordan*, 104 Texas 618, 143 S.W. 141 (1912); *Kubena v. Hatch*, 144 Texas 627, 193 S.W. 2d 175 (1946); 30 American Jurispru-

dence 173, Judgments Sec. 20; 1 Freeman, *Judgments* (5th ed.), p. 648; 25 Texas Jur. 695, Judgments Sec. 255.

The judgments of the courts below are reversed and the cause is remanded to the district court for further proceedings in accordance with this opinion.

Opinion delivered February 21, 1962.