ACCEPTED
03-14-00731-CV
4696965
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/30/2015 3:31:31 PM
JEFFREY D. KYLE
CLERK

IN THE
COURT OF APPEALS
THIRD DISTRICT OF TEXAS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/30/2015 3:31:31 PM
JEFFREY D. KYLE
Clerk

NO. 03-14-00731-CV

JUANA MENDEZ VALDEZ
ET VIR JUAN VALDEZ, Appellants

V.

MELODY MUELLER MOERBE, Appellee

**APPELLEE'S BRIEF**

On Appeal from the 155th District Court of Fayette County, Texas
Trial Court Cause No. 2013V-052

**GATES, STEIN, GILLESPIE &
TREFNY**
MICHAEL T. TREFNY
TBN 20207650
P. O. Box 458
Columbus, Texas 78934
Telephone: (979) 732-2301
Facsimile: (979) 732-2303
Email: mtrefny@gsgtlawfirm.com

**ATTORNEYS FOR APPELLEE,
MELODY MUELLER MOERBE**

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANTS:**   JUANA MENDEZ VALDEZ
ET VIR JUAN VALDEZ

**REPRESENTED BY:**   O.F. Jones III
Attorney at Law
PO Drawer E
Victoria, Texas  77902
Telephone: (713) 758-2391
Facsimile: (713) 615-5903
Email: ofjones360@gmail.com

**APPELLEE:**   MELODY MUELLER MOERBE

**REPRESENTED BY:**   Michael T. Trefny
GATES, STEIN, GILLESPIE & TREFNY
PO Box 458 – 415 Spring Street
Columbus, Texas  78934
Telephone: (979) 732-2301
Facsimile: (979) 732-2303
Email: mtrefny@gsgtlawfirm.com

**TRIAL COURT:**

DISTRICT COURT-   Honorable Judge Dan R. Beck
155th Judicial District Court of Fayette County
151 North Washington – Room 201
La Grange, Texas  77475
Telephone: (979) 968-8500
Facsimile: (979) 966-0799

# TABLE OF CONTENTS

**Page(s)**

IDENTITY OF PARTIES AND COUNSEL ............................................... ii

INDEX OF AUTHORITIES ................................................................ iv

STATEMENT OF THE CASE ............................................................. v

STATEMENT CONCERNING ORAL ARGUMENT ............................. vi

ISSUES PRESENTED ...................................................................... vi

RECORD REFERENCES ................................................................ viii

STATEMENT OF FACTS ................................................................. 1

ARGUMENT AND AUTHORITIES ..................................................... 8

    Standard of Review ................................................................. 8

    Summary of Argument ............................................................. 9

    Appellee's Response to Appellants' Point of Error One ..................... 15

    Appellee's Response to Appellants' Point of Error Two .................... 22

    Appellee's Response to Appellants' Point of Error Three ................... 29

CONCLUSION ............................................................................. 30

PRAYER .................................................................................... 32

CERTIFICATE OF COMPLIANCE ................................................... 33

CERTIFICATE OF SERVICE .......................................................... 33

# INDEX OF AUTHORITIES

## Cases

*Barrett v. McKinney*, 93 S.W.2d 240, 242 (Court of Civ. Appeals, 1906) ................................................24

*Blaylock v. Riser*, 163 Tex. 235; 354 S. W. 2d 134 (1962)................................................................25

*Blaylock*, 163 Tex. At 238................................................................................................................25

*Chambers v. Shaw*, 23 Tex. 165, (1859) .........................................................................................28

*Coleman v. Waddell*, 151 Tex. 337, 249 S.W.2d 912 (1952)..........................................................17

*Coleman v. Waddell*, 151 Tex. 340 ................................................................................................17

*Doyle v. Ellis*, 549 S.W. 2d 62 (Tex. Civ. App.—Waco, 1977, no writ) ..........................................17

*Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex. Cr. App. 1980). .........................................................26

*Harmon v. Overton Refining Co.*, 130 Tex. 365, 109 S. W. 2d 457 (1937)......................................18

*Heard v. State*, 146 Tex. 139, at 146, 204 S. W. 2d 344, at 348, (1947)..........................................16

*Holley v. Watts*, 629 S. W. 694, 696 (Tex.1982)..............................................................................8

*In re GMC*, 296 S. W. 3d 813 (Tex. App. – Austin, 2009, no pet.) .................................................26

*In Re King's Estate*, 244 S. W. 2d 660, 661 (Tex. 1951)..................................................................9

*In Re King's Estate*, 244 S. W. 2d 660, 662 (Tex. 1951). ................................................................8

*King v. Bauer*, 688 S. W. 2d 845, 846 (Tex. 1985).........................................................................9

*Mata v. Mata*, 710 S. W. 2d 756, 757-8 (Tex. App. – Corpus Christi, 1986, no writ.)....................8

*McGalliard v. Kuhlmann*, 722 S. W. 2d 694, 696-697 (Tex. 1986)...................................................8

*Pool v. Ford Motor Co.*, 715 S. W. 2d 629, 635 (Tex. 1986) ...........................................................8

*Poole v. Gode*, 442 S. W. 2d 810 (Tex. Civ. App. – Houston [14th District] 1969, writ refused n. r. e......28

*Royal Independent School Dist. V. Ragsdale*, 273 S. W. 3d 759, 763 (Tex. App. – Houston [14th Dist.]
2008, no pet.)..................................................................................................................................26

*Satterwhite v. Rosser*, 61 Tex. 166, at 171, (1884). Cited with approval in *Heard v. State*, 146 Tex. 139,
146, 204 S.W. 2d 344, 348 (1947) ...................................................................................................16

*Schleicher v. Gatlin*, 85 Tex. 270, at 275, 20 S. W. 120, at 123, (1892), Tex. ................................16

*Sun Oper. L.P. v. Oatman*, 911 S.W.2d 749, 758 (Tex.Civ. App.—Austin, 1987, writ denied) ................16

*Surkey v. Qua*, 173 S.W. 2d 230 (error refused for want of merit) ................................................17

*York v. Thompson Lumber Co.*, 169 S.W. 2d 187................................................................................17

## Rules

Tex. R. Civ. P. Rule 278 ..................................................................................................................29

Texas Rules of Civil Procedure, Rule 510.1 et seq ...........................................................................24

## Treatises

2 Corpus Juris Secundum, Adverse Possession, sub. b, Sec. 185 ......................................................18

Texas Jurisprudence 3rd §72 ............................................................................................................28

## Code

Property Code Chapter 24.001 .........................................................................................................25

Tex. Civ. Prac. & Rem. §§16.025 and 16.026................................................................9, 23

Tex. Civ. Prac. & Rem. §16.025 ...................................................................................16, 23

# STATEMENT OF THE CASE

**Nature of the Case:** This case involves the appeal by the Appellants/Plaintiffs below from findings by the jury that Plaintiffs did not adversely possess land owned by Melody Mueller Moerbe, Appellee/Defendant below. Appellants submitted a jury question under the ten (10) year limitations rule and a separate question under the five (5) year limitations rule. Both were answered "no" by the jury.

**The Trial Court:** Cause No. 2013V-052, in the 155th Judicial District Court of Fayette County, Texas, Judge Daniel Beck presiding by assignment after the voluntary recusal of Judge Jeff Steinhauser, sitting district judge; Trial was commenced May 27, 2014.

**Course of Proceedings:** Trial was commenced May 27, 2104 and a jury was duly empaneled. The jury returned its verdict May 30, 2014. The Court duly charged the jury and submitted the questions requested by the Appellant/Plaintiff. The jury returned its verdict on May 30, 2014. The court heard Motions for Entry of Judgment by Appellee/Defendant and for Directed Verdict by Appellant/Plaintiff.

**Trial Court's Disposition:** The Court entered final judgment that Appellants/Plaintiffs take nothing on July 30, 2014.

## STATEMENT CONCERNING ORAL ARGUMENT

Appellee does not request oral argument, and requests oral argument be waived. The issues of law are not unique, and arguing interpretation of the facts would serve no good purpose. The record is clear. The standard of appellate review is no evidence and there is ample evidence to support the jury's verdict. Furthermore, the value the land in controversy is relatively small and the expense of oral argument is undesirable.

## ISSUES PRESENTED

While Appellants did not present a concise statement of the separate issues complained of on appeal, their Issues Presented section of Appellants' Brief state that "Appellants assert that the trial court erred in refusing to grant their Motion for Instructed Verdict and Motion for Judgment Notwithstanding Verdict based upon the five year and the ten year statute of limitations. Appellants go on to say that the jury findings were against the great weight and preponderance of the evidence. However, since Appellants as the parties claiming to have adversely possessed the property bore the burden of proof on the issues, the standard of review is a "no evidence" standard, not against the great weight and preponderance of the evidence. Appellants appear to recognize the no evidence standard of review on page 20 of their brief. Further, on page 22, paragraph b. of Appellants' Brief, they

simply complain that "Appellants established good title to the 1.93 acre tract under the ten (10) year statute of limitations", and on page 30, paragraph c., that "Appellants established good title to the 1.93 acre tract under the five (5) year statute of limitations".

Appellants also complained that the trial court committed reversible error by failing to properly charge the jury on the law. However, Appellants fail to point with specificity to the particular error complained.

The real questions presented by Appellants' arguments are quite simple. First, "As a matter of law does the possession and use of a portion of a property entitle you to adverse possession of the entirety of the property under the 10 year rule?" The answer of course is "no". Appellants failed to show how much of Appellee's property they did use and possess, instead seeking to claim it all by adverse possession of only a portion. They claimed it all even though it was clear they did not use it all for the required ten year period. The judgment in this case is the result of Appellant's knowing waiver of the right to pursue adverse possession of the sliver of land they actually used for 10 years, instead only claiming to have adversely possessed the entirety of the tract without proof of such use to the extent required by the statute and case law. This is an evidentiary issue governed by the no-evidence standard.

The second question presented is: "Does the filing of a Petition for Forcible Entry and Detainer toll limitations on adverse possession?" Here the answer is "Of course it does." Forcible Entry and Detainer is the usual and most expedient recourse to remove trespassers. It is not a nullity because on re-trial Appellants decided to raise the issue of title. This is an issue of law for the Court.

## RECORD REFERENCES

The Reporter's Record consists of six (6) volumes and will be cited as "RR [vol], [page]."

The Clerk's Record consists of one (1) volume to be cited as "CR [page]" and a Supplemental Clerk's Record to be cited as "SCR [page]."

## STATEMENT OF FACTS

Appellant stipulated the Appellee, Melody Mueller Moerbe, was the record title holder of a 0.92 acre tract, she inherited from her grandmother, Mrs. Seeberger, herein the "Seeberger tract". (RR Vol. 2, P. 12, LL16) Near the Seeberger tract was a tract acquired by Mike Steinhauser from Chris Houston. (RR Vol. 3, P. 125, LL 4-19 and Plaintiff's Ex. 1). Mike Steinhauser sold the tract to Ms. Arnie Marie Gordon (RR Vol. 3, P. 129, LL 22-P. 130, LL 4). Mr. Steinhauser testified that no one could reasonably know the boundary lines of the tracts in that area without a survey, and he didn't know what he owned and sold to Ms. Gordon, and she had no way of knowing it either. (RR Vol. 3, P. 154, LL 11-P. 155, LL 24) The Seeberger tract was not included in the 1999 deed from Arnie Marie Gordon. (RR Vol. 3, P. 149, LL 18-21 & P. 150, LL 8-10)

The Seeberger tract was all grown up in brush. (RR Vol. 3, P. 29, LL 24-P. 30, LL 10). Appellants did not clear the entire property when they first took possession in 2000, but rather only cleared a little area for the first trailer in 2000 (RR Vol. 3, P. 32, LL 10-21) which is situated very close to the edge of the Seeberger tract along an area of unknown ownership, and only partially on the Seeberger tract. (RR Vol. 3, P. 65, LL 5-14) Appellants never fenced any of the land except a fence along the front of their first trailer which does not enclose anything and is not on the Seeberger tract. (RR Vol. 3, P. 63, LL 2-15) Valdez did

1

not clear the lower portion where the second trailer was situated until that trailer was installed in 2005. (RR Vol. 3, P. 65, LL 11-14)

Lillie Seeberger owned the Seeberger tract, legally and equitably, in 2006 because nobody established any rights to the contrary. (RR Vol. 3, P. 145, LL 15-17) Juana Valdez was well aware that somebody else owned that tract, the Seebergers, in early 2006 when she got the survey back (RR Vol. 3, P. 144, LL 19-24) Juana Valdez was upset about the fact that somebody else owned the tract on which she had partially located her trailer. (RR Vol. 3, P. 145, LL 20-22) Instead of addressing the partial trespass, Juana Valdez set about to take the property by false Affidavit of Use and Possession (Defendant's Ex. 7), by encouraging Ms. Gordon to execute a "Deed Without Warranty" conveying to Ms. Mendez Valdez much more land than she owned (Defendant's Ex. 6), clearly designed to start the five (5) year limitations period, and thereafter clearing more land and moving more trailer houses onto the property. (Defendant's Ex. 9 and testimony at RR Vol. 3, PP. 98-100) There are now four (4) mobile homes and some sheds on the Seeberger tract. (RR Vol. 3, P40, LL 18)

Appellant, Juana Mendez Valdez was caught in multiple lies about her claimed use of the Seeberger tract, both at trial and in an Affidavit of Use and Possession (Defendant's Exhibit 7). Juana Valdez testified at trial that Ms. Gordon showed her (Valdez) the four corners of the property sold, being from I-10 to

2

Walnut, to Collins Street, to Hackberry and back up to I-10. (RR. Vol. 3, P. 28, LL 1-P. 29, LL 5) Mr. Mr. Steinhauser, who sold the land to Ms. Gordon, never told Ms. Gordon that he was selling her the entire boundary between Walnut, Collins and Hackberry Streets and Interstate 10, or even "this is your four corners." (RR Vol. 3, P. 153, LL 17-24) Mr. Steinhauser admitted that he never had a clue where the boundaries were (RR Vol. 3, P. 155, LL 18-24) Mr. Steinhauser testified that Ms. Gordon would not have been able to know where the four corners of her property were...no one could without a survey. (RR Vol. 3, P. 154, LL 11-P. 155, L1-21)

Appellants' attorney, Mike Steinhauser, testified that he personally knew Arnie Marie Gordon (RR Vol. 3, P. 150, LL 18-23), and that she was not the kind of person who did misrepresent things...she was "brutally honest" (RR Vol. 3, P. 151, LL 9-11), that she was not well educated (i.d. at LL 15-18); that she was not knowledgeable of deeds and property descriptions (i.d. at LL 19-21).

Juana Valdez also testified that Ms. Gordon told her the tract contained two (2) acres. (RR Vol. 3, P. 72, LL 20-24) Per Mr. Steinhauser, he computed the total area of 1.93 acres for purposes of the Affidavit of Use and Possession, and prior to that date no one knew how many acres were involved. (RR Vol. 3, P. 142, LL 3-11) The deed from Gordon to Juana Mendez Valdez in 1999 (Defendant's Ex. 3), did not show a description of two acres. Juana Valdez admitted that she only paid

taxes on 0.443 acres until 2007. (RR Vol. 3, P. 80, LL 11-23). She also admitted on cross examination that she didn't know how many acres were in the Seeberger tract until after it was computed by Steinhauser, and Ms. Gordon could not have told her any tract contained two acres.

Juana Valdez also lied in the Affidavit of Use and Possession which she fraudulently filed in May 2006. (Defendant's Exhibit 7) In particular, she swore in her affidavit that Ms. Gordon had been paying taxes on all of the property covered by the Affidavit, being the entire 1.93 acres computed by Mike Steinhauser, including the Seeberger tract. (*Id.*) However, her tax statements show she was not taxed on the Seeberger tract until after the Affidavit was filed in May 2007 (Plaintiffs' Ex. 7) but thereafter she was taxed on the entire 1.93 acres (RR Vol. 3, P. 38, LL 25-P. 39, LL 3). Juana Valdez admitted under cross that she only paid taxes on 0.443 acres until 2007. (RR Vol. 3, P. 80, LL 11-23) Juana Valdez also swore under oath in her Affidavit that Ms. Gordon had made use of all of the property, being the 1.93 acres described therein, since she (Ms. Gordon) bought it from Mike Steinhauser (Defendant's Ex. 7). Again, Mr. Steinhauser admitted that he never had a clue where the boundaries were (RR Vol. 3, P. 155, LL 18-24). Mr. Steinhauser testified that Ms. Gordon would not have been able to know where the four corners of her property were…no one could without a survey. (RR Vol. 3, P. 154, LL 11-P. 155, L1-21). Further, Juana Valdez even acknowledged in her trial

4

testimony on direct that when they went onto the property "It was ugly. It was nothing but brush. There were rotten trees. You couldn't see anything." (RR Vol. 3, P. 29, LL 24) Finally, in cross examination, Juana Valdez admitted that she did not know of ANY acts of control by Ms. Gordon. She testified that only she and her husband cleared any of it. (RR Vol. 3, P. 89, LL 21- P. 90, LL 12)

Juana Valdez asked her friends, Pedro Villegas and Cesaria Cedillo, to sign an Affidavit corroborating the facts in her Affidavit of Use and Possession (Their affidavit at Defendant's Ex. 8; admitted RR Vol. 2, P. 13). The affidavit states that Villegas and Cedillo had read all of the facts in Juana Mendez (Valdez') affidavit and those facts are true and correct and within their personal knowledge (Def. Ex. 8; RR Vol. 3, P. 91, LL 12-18). However, on cross examination, Juana Valdez admitted that Villegas and Cedillo never saw her Affidavit of Use and Possession (RR Vol. 3, P. 92, LL 4-25). They also did not have personal knowledge of any of the facts, such as whether she (Mendez Valdez) paid her taxes on time (RR Vol. 3, P. 93, LL 4-16). Likewise, they did not know if Ms. Gordon had paid taxes on the property, or whether she made any use of the property. (RR Vol. 3, P. 94, LL 13-24)

Juana Valdez also attempted to fabricate testimony that she knew where the blackjack tree described in her deed from Ms. Gordon in 1999 (Defendant's Ex. 3) was located. (RR Vol. 3, P. 55, LL 9-24) She even purported to point the tree out

5

on a plat at trial. (RR Vol. 3, P. 56, LL 5-P. 57, LL 12) However, upon closer cross examination, Juana Valdez admitted that she did not know what a blackjack tree even looked like and only picked that tree because it was close to her house. (RR Vol. 3, P. 58, LL 6-15) Juana Valdez was shown the old deed to Steinhauser in 1984 (Plaintiff's Exhibit 1, Deed from Houston to Steinhauser) (RR Vol. 3, P. 59) where the third paragraph stated that the property described "being the same property described in a deed Amanda Evans to Fannie Evans Taylor dated January 13, 1914" showing that the tree described was described over 100 years earlier (RR Vol. 3, P. 60, LL 2-9). Juana Valdez then confessed that she merely "imagined" the tree was the one referred to in her original deed. She also admitted she knew nothing about measurements. (RR Vol. 3, P. 60, LL 12-25)

This case commenced on March 1, 2012, when Appellee, Melody Mueller Moerbe, first filed suit for Forcible Entry and Detainer in the Justice Court. See Petition in Forcible Detainer at Defendant's Exhibit 32 (RR Vol. 6, P. 234-244). The record contains no other references to pleadings and evidence in the Justice Court or County Court on Appeal. In the Petition in Forcible Entry and Detainer, Melody Mueller Moerbe sought to recover the property in question from the trespassers, Juana Mendez Valdez and Juan Valdez, who held no title to the property. It has been acknowledged by Appellants that the Forcible Detainer suit was to recover possession of the property back from Ms. Mendez Valdez by the

6

record title owner. (RR Vol. 3, P. 146, LL 24-P. 147, LL 1) The exact timing is unclear in the record, but Valdez's attorney, Mike Steinhauser, admitted he filed a general denial in the underlying Forcible Entry and Detainer suit. (RR Vol. 3, P. 147, LL 18-23) In that case, Appellant claimed to be the owner of the property, not by adverse possession but by a Special Warranty Deed. (RR Vol. 3, P. 148, LL 9-13) In fact Appellant plead in the Forcible Detainer case that "Plaintiff should provide written proof via bona fide up-to-date survey performed by a registered professional licensed surveyor to determine the actual boundaries of plaintiff's property and defendant's property." (RR Vol. 3, P. 147, LL 24-P. 148, LL 3)

It was not until sometime later, after having lost the forcible detainer action, that Appellants' asserted a claim of title to Mrs. Moerbe's property (the Seeberger tract) by adverse possession. In any event, when Appellants asserted a claim of title to the property, the appeal to the County Court of Fayette County was abated by said court. It is uncontested that Appellants did not file suit in this case until February 15, 2013, while the County Court eviction case was pending, but after raising the issue of the jurisdiction of such court. That action is still pending, awaiting the final judgment in this case.

## ARGUMENT AND AUTHORITIES

**Standard of Review**

Appellee agrees with Appellants' statement that "in attacking an adverse finding to an issue upon which he or she had the burden of proof, the appellant must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue." (Appellants' citation omitted)

In reviewing a "no evidence" point of error where the party has the burden of proof, the reviewing court must first examine the record for evidence that supports the finding while ignoring the evidence to the contrary. If there is no evidence to support the finding, the court must then further examine the entire record to see if the contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S. W. 694, 696 (Tex.1982); *McGalliard v. Kuhlmann*, 722 S. W. 2d 694, 696-697 (Tex. 1986); *Mata v. Mata*, 710 S. W. 2d 756, 757-8 (Tex. App. – Corpus Christi, 1986, no writ.).

The finding must be upheld unless the court finds that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous and unjust. *Pool v. Ford Motor Co.*, 715 S. W. 2d 629, 635 (Tex. 1986); *In Re King's Estate*, 244 S. W. 2d 660, 662 (Tex. 1951).

If there is any evidence of probative force to support the finding, the no evidence point must be overruled and the finding upheld. *In Re King's Estate*, 244 S. W. 2d 660, 661 (Tex. 1951); *King v. Bauer*, 688 S. W. 2d 845, 846 (Tex. 1985).

## Summary of Argument

There is ample factual support for the jury's finding that Appellants did not possess and use the property sufficiently to give notice of adverse claims for a ten (10) year period from the admissions of fact in the testimony of Juana Valdez and the testimony of Mike Steinhauser.

The Forcible Entry and Detainer suit was a suit to recover real property as defined by Tex. Civ. Prac. & Rem. §§16.025 and 16.026, and the Justice Court had jurisdiction over the suit until a determination was made in such court that it did not have jurisdiction. Therefore, limitations were interrupted by such suit as a matter of law.

## Juana Valdez' lack of credibility/impeachment

In analyzing the no evidence points presented by Appellants, all of Appellant Juana Valdez' testimony should be disregarded, except that which supports the verdict. This is even more so in this case because Appellants simply did not present credible evidence. Juana Valdez' testimony was not "clear, direct, and positive with no circumstances tending to discredit or impeach such

9

testimony" as suggested by Appellants, and as such, may not be considered as evidence against the findings by the jury, even in absence of other evidence. In their brief, Appellants have reiterated only Juana Valdez' testimony in favor of her position. (See Appellants' Brief generally.) Plaintiffs ignore all of her conflicting statements and admissions in clear contravention of her earlier testimony regarding use of the property, and hence, whether the Plaintiffs have established each element of adverse possession. Counsel for Melody Mueller Moerbe, Appellee, elicited from Juana Valdez on cross examination much testimony in direct contravention of the testimony Valdez "agreed to" as presented by Valdez' attorney on direct. (See cross examination of Juana Valdez, generally at CR Vol. 3, PP. 54-104, to be cited with greater specificity below.) While Appellee's counsel did not repeatedly object to the leading nature of questioning by Appellants' attorney, and makes no complaint at this time, the fact that Mrs. Valdez could not testify without help from her attorney is clearly obvious from the transcript. (See generally direct exam of Juana Valdez, CR Vol. 3, PP 1-53) If must be accepted that the jury saw it as well.

Juana Valdez greatly exaggerated her knowledge when under direct examination. The following are some of the out and out lies she told in an apparent attempt to bolster her case. Juana Valdez testified Gordon showed her (Valdez) the four corners of the property sold, being from I-10 to Walnut, to Collins Street,

10

to Hackberry and back up to I-10. (RR. Vol. 3, P. 28, LL 1-P. 29, LL5) This could not possibly be true. Mr. Steinhauser, who sold the land to Ms. Gordon, never told Ms. Gordon that he was selling her the entire boundary between Walnut, Collins and Hackberry Streets and Interstate 10, or even "this is your four corners." (RR Vol. 3, P. 153, LL 17-24) Mr. Steinhauser admitted that he never had a clue where the boundaries were (RR Vol. 3, P. 155, LL 18-24). Mr. Steinhauser testified that Ms. Gordon would not have been able to know where the four corners of her property were...no one could without a survey. (RR Vol. 3, P. 154, LL 11-P. 155, L1-21)

So either Mrs. Valdez was lying at trial, or Ms.Gordon lied to her. They are completely inconsistent. Fortunately, Appellants' attorney, Mike Steinhauser, testified that he personally knew Arnie Marie Gordon (RR Vol. 3, P. 150, LL 18-23), and that she was not the kind of person who did misrepresent things...she was "brutally honest" (RR Vol. 3, P. 151, LL 9-11), that she was not well educated (i.d. at LL 15-18); that she was not knowledgeable of deeds and property descriptions (i.d. at LL 19-21).

That was not the only lie the jury heard. Juana Valdez also testified that Ms. Gordon told her the tract contained two (2) acres. (RR Vol. 3, P. 72, LL 20-24) Again, this just could not be true. Per Mr. Steinhauser, he computed the total area of 1.93 acres for purposes of the Affidavit of Use and Possession, and no one knew

11

how many acres were involved prior to that date. (RR Vol. 3, P. 142, LL 3-11) The deed from Gordon to Juana Mendez Valdez in 1999 (Defendant's Ex. 3) did not show a description of two acres. Mrs. Valdez admitted that she only paid taxes on 0.443 acres until 2007. (RR Vol. 3, P. 80, LL 11-23) She did not know how many acres were in the Seeberger tract until after it was computed by Steinhauser, and Ms. Gordon could not have told her any tract contained two acres. Mrs. Valdez was caught in another lie.

Mrs. Valdez also lied in the Affidavit of Use and Possession which she fraudulently filed in May 2006 (Defendant's Exhibit 7). In particular, she swore in her affidavit that Ms. Gordon had been paying taxes on all of the property covered by the Affidavit, being the entire 1.93 acres computed by Mike Steinhauser, including the Seeberger tract (*Id.*). However, her tax statements show she was not taxed on the Seeberger tract until after the Affidavit was filed in May 2007 (Plaintiffs' Ex. 7), but thereafter she was taxed on the entire 1.93 acres (RR Vol. 3, P. 38, LL25-P. 39, LL 3). Mrs. Valdez admitted under cross that she only paid taxes on 0.443 acres until 2007. (RR Vol. 3, P. 80, LL 11-23) Mrs. Valdez also swore under oath in the Affidavit Ms. Gordon had made use of all of the property, being the 1.93 acres described therein, since she (Ms. Gordon) bought it from Mike Steinhauser. Again, Mr. Steinhauser admitted that he never had a clue where the boundaries were (RR Vol. 3, P. 155, LL 18-24). Mr. Steinhauser testified that Ms.

12

Gordon would not have been able to know where the four corners of her property were...no one could without a survey. (RR Vol. 3, P. 154, LL 11-P. 155, L1-21) Further, Mrs. Valdez contradicted the sworn affidavit wherein she stated that Ms. Gordon had previously occupied and used all of the property (1.93 acres including the Seeberger tract) (Defendant's Ex. 7). However, Mrs. Valdez's candidly admitted in her trial testimony on direct that when they went onto the property "It was ugly. It was nothing but brush. There were rotten trees. You couldn't see anything." (RR Vol. 3, P. 29, LL 24). However, Ms. Gordon made no visible use of the property, being the Seeberger tract. Juana Valdez finally admitted that she did not know of ANY acts of control by Ms. Gordon, saying only she and her husband cleared any of it. (RR Vol. 3, P. 89, LL21-P. 90, LL 12). Juana Valdez clearly fabricated all of the statements in her Affidavit of Use and Possession.

Not only did Juana Valdez fabricate evidence, she enlisted her friends to do so as well in an effort to bolster her claims. Juana Valdez asked her friends, Pedro Villegas and Cesaria Cedillo, to sign an Affidavit corroborating the facts in her Affidavit of Use and Possession (Their affidavit at Defendant's Ex. 8; admitted RR Vol. 2, P. 13). The affidavit states that Villegas and Cedillo had read all of the facts in Juana Mendez (Valdez's) affidavit and those facts are true and correct and within their personal knowledge (Def. Ex. 8; RR Vol. 3, P. 91, LL 12-18). However, on cross examination, Juana Valdez admitted that Villegas and Cedillo

13

never saw her Affidavit of Use and Possession (RR Vol. 3, P. 92 LL 4-25). They also did not have personal knowledge of any of the facts, such as whether she (Mendez Valdez) paid her taxes on time (RR Vol. 3, P. 93, LL 4-16). Likewise, they did not know if Ms. Gordon had paid taxes on the property, or whether she made any use of the property. (RR Vol. 3, P. 94, LL 13-24)

Juana Valdez would seize upon any opportunity to try to puff up her case, with utter disregard for whether there was any truth to it. Juana Valdez had the audacity to claim that she knew where the blackjack tree described in her deed from Ms. Gordon in 1999 (Defendant's Ex. 3) was located. (RR Vol. 3, P. 55, LL 9-24) She even purported to point the tree out (RR Vol. 3, P. 56, LL 5-P. 57, LL 12). However, upon closer cross examination, Mrs. Valdez confessed that she did not know what a blackjack tree looked like and only picked that tree because it was close to her house. (RR Vol. 3, P. 58, LL 6-15) When Juana Valdez was shown the old deed to Steinhauser in 1984 (Plaintiff's Exhibit 1, Deed from Houston to Steinhauser) (RR Vol. 3, P. 59) where the third paragraph state that the property described "being the same property described in a deed Amanda Evans to Fannie Evans Taylor dated January 13, 1914" showing that the tree described was described over 100 years earlier (RR P. 60, LL 2-9), Juana Valdez then confessed that she merely "imagined" the tree was the one referred to in her original deed. Juana Valdez imagined much that was convenient and she thought helpful without

14

any regard for the truth. She not only lied, but mostly lied except when confronted with documentation. So much of what she testified to was made up to suit her story, the jury was well founded in choosing what to believe from Juana Valdez' testimony and in disregarding any of her testimony because it was not positive, clear, direct and free of contradictions. If she lied about these many critical issues, the jury was justified in not believing anything she said, even if there was no direct conflicting testimony.

Due to the egregious lies by Juana Valdez, the jury would be justified in not accepting any single bit of testimony from her, and therefore, her claims would be completely unsubstantiated, even without admissions to the contrary. None of her testimony regarding use of the property is credible and it fails to provide any basis for her claims as a matter of law.

**Appellee's Response to Appellants' Point of Error One, to-wit:**

> **"Appellants established a good title to the 1.93 acre tract under the ten year statute as a matter of law."**

The law on adverse possession has not changed much in the last 100 years. The old and middle aged Texas Supreme Court cases are still good precedent and guide interpretation of the current statutes. The Texas Supreme Court has held:

> It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery. It has been said that such possession must not only be actual, but also

visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.

*Satterwhite v. Rosser*, 61 Tex. 166, at 171, (1884). Cited with approval in *Heard v. State*, 146 Tex. 139, 146, 204 S.W. 2d 344, 348 (1947).

"When a person enters upon land without any deed or color of title, he is a naked possessor, and his possession is restricted to the land actually occupied by him."

*Schleicher v. Gatlin*, 85 Tex. 270, at 275, 20 S. W. 120, at 123, (1892), Tex.

"To constitute adverse possession, the party occupying the land must in some way appropriate the land for some purpose to which it is adapted. Mere occupancy of the land without any evidence of an intention to appropriate it will not support the statute of limitation."

*Heard v. State*, 146 Tex. 139, at 146, 204 S. W. 2d 344, at 348, (1947).

Appellants were naked trespassers and as such had the burden of pleading and proving the extent of the land they actually occupied. *See Schleicher*, 85 Tex. At 275.

Under the ten (10) year rule, Appellants are obligated to show the extent of the lands they claim to have adversely possessed and do not have the benefit of the presumption of use and occupancy of all of the lands described in a deed made the subject of a claim under the five (5) year statute, Tex. Civ. Prac. & Rem. §16.025. See also *Sun Oper. L.P. v. Oatman*, 911 S.W.2d 749, 758 (Tex. Civ. App.—Austin, 1987, writ denied). Appellants had the burden to plead and prove what lands they occupied and possessed sufficient to establish limitations. *Coleman v. Waddell*,

151 Tex. 337, 249 S.W.2d 912 (1952). In that case, where Plaintiff had used a garden out of a larger tract for a long period of time, the Court found:

> Respondents failed to allege or prove any description of the garden claimed by them. For that reason the trial court could not render judgment in their favor for it. They had they burden of identifying the tract, and since they failed to do so, the trial court properly rendered judgment in favor of the record owners for title to the entire tract. *Surkey v. Qua*, 173 S.W. 2d 230 (error refused for want of merit); *York v. Thompson Lumber Co.*, 169 S.W. 2d 187."

*Coleman v. Waddell*, 151 Tex. 340. As in that case, Appellants failed to plead and prove what portion of the tract they occupied, since it was less than the entire tract. Appellants never sought to recover less than 100% of the Seeberger tract. They argue that they are entitled to all of it under the ten (10) year statute, even though they admittedly did not use all of it. More particularly, Appellants stated in their brief:

> "The jury may have believed that the Appellants did not use all of the property at the outset of their occupancy, and consequently did not have exclusive possession of all of the 0.992 acre tract from the beginning. That is not the law, and under the facts of this case, the use of so much of it as they could over the period of time that it took to clear it and put it to other use was sufficient."

Appellants' brief at pages 26-27. Appellants cite the case of *Doyle v. Ellis*, 549 S.W. 2d 62 (Tex. Civ. App.—Waco, 1977, no writ), for the proposition that they did not need to use the entirety of the property for the entire period. To the extent *Doyle* conflicts with *Coleman*, it is probably not good law. However, both must be read in light of the purpose of reviewing the sufficiency and extent of the

claimant's use, and that is to determine whether such use was sufficient to put the record owner on notice of an adverse claim of title.

> "It is well settled that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and *is confined to the limits thereof* (emphasis added). Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, *he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period.* (emphasis added) (String citations omitted) 2 Corpus Juris Secundum, *Adverse Possession*, sub. b, Sec. 185."

*Harmon v. Overton Refining Co.*, 130 Tex. 365, 109 S. W. 2d 457 (1937).

Under the Texas Supreme Court holding in *Harmon*, in order for Appellants to acquire title by adverse possession of adjoining land outside the limits of the boundaries of the original deed, they must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession and mature into title after the statutory period of 10 years.

Appellants had two ways to plead and prove this case. First, they could have plead and proved that they used a specific portion of the property. That should have been an easier burden but would not have allowed them to obtain title to the entire tract. Second, Appellants could have chosen to plead and prove that they used the entire tract sufficiently to claim adverse possession. In fact, they did neither. Instead, as the cite to pages 26-27 of Appellants' brief reveals, they plead they are entitled to it all by merely using a portion. That simply is not the law

18

under the 10 year rule. (It is the standard under the 5 year rule where they claim the property described in a deed.) Having made the election to pursue the entirety of the Moerbe tract, it was incumbent upon them to show that their use, whatever it was, was "of such a character as of itself will give notice of an exclusive adverse possession", not only as to a portion, but as to all. This was clearly a fact issue for the jury.

Appellants' argument, and requested instruction, that any use of the property for the period would be sufficient as to all, is an incorrect statement of the law, and would have been improper. Appellants requested the questions submitted to the jury, presented no proper further instructions on this issue and waived any right to complain about them. Therefore any error in the question or instruction is waived and not grounds for reversal. The Court properly denied Appellants' requested instruction because it misstated the law. (SCR Pages 13-17)

The question answered by the jury was basically whether the use Appellants made of the Moerbe tract was of the nature and character sufficient to establish limitations to the entire tract. This was a jury question on which Appellants bore the burden of proof, and it being found against them, the standard of review by this court is whether they established the facts as a matter of law.

The Seeberger tract was all grown up in brush and they did not clear it right away. (RR Vol. 3, P. 29, LL 24-P. 30, LL 10) Appellants did not clear the entire

property when they first took possession in 2000, but rather only cleared a little area for the first trailer in 2000 (RR Vol. 3, P. 32, LL 10-21) which is situated very close to the edge of the Seeberger tract along an area of unknown ownership, and only partially on the Seeberger tract. (RR Vol. 3, P. 65, LL 5-14)

While Appellants have shown that the first trailer house erected in 2000 is partially upon the Seeberger tract, that was far from open and obvious at the time. Appellants never fenced any of the land except a fence along the front of their first trailer which does not enclose anything and is not on the Seeberger tract. (RR Vol. 3, P. 63, LL 2-15) Valdez did not clear the lower portion where the second trailer was situated until that trailer was installed in 2005. (RR Vol. 3, P. 65, LL 11-14)

When looking at the year 2002, the first year of a ten year limitations period tolled March 1, 2012, there simply was not much use of the property. Valdez had one trailer on a slim portion of the property, cleared just enough to put the trailer on, and was not paying taxes.

It was not until 2006, well short of the 10 year period, that Appellants began an intentional development of the entirety of the property with the goal of adverse possession. That is when Appellants discovered they had located on an entirely different property than they had purchased and sought to set up adverse possession by filing a false Affidavit of Use and Occupancy, and talking the uneducated Ms. Arnie Marie Gordon into executing a Correction Deed Without Warranty.

Appellants admitted that they did not use other portions of the property for the entire 10 year period.

Appellants have accepted their no evidence burden to set aside the jury's finding to Question No. 1 and that the Appellate Court must disregard all evidence which supports Appellants' failed claims, and consider only the evidence which supports the jury's negative finding. (Appellants' Brief, page 20) There is more than a scintilla of evidence to support the jury's findings that the Appellants' use of the Seeberger tract was NOT so "visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.

**Appellee's Response to Appellants' Point of Error Two, to-wit:**

> **"Appellants established a good title to the 1.93 acre tract under the five year statute as a matter of law."**

Appellants do not contest the facts relating to the denial of their claim of adverse possession under the five (5) year rule. They have a deed, albeit fraudulent, that describes a 1.93 acre tract, including Appellee's 0.992 acres. They had some possession and use of the property, and that is all that is required under the 5 year rule (as opposed to the 10 year rule requiring proof of the extent of possession). The sole question is whether Appellee's filing of the Petition in Forcible Entry and Detainer in Justice Court stops the running of limitations. Clearly it does.

21

Appellants argue that the instruction on Question No. 2, that "a suit that has been abandoned, dismissed for want of prosecution, settled, or otherwise not prosecuted to final judgment does not interrupt the running of the period of limitations." There is no doubt that this is a correct statement of the law. On the other hand, Appellants' requested instruction, if properly made, was an improper comment on the weight of the evidence, being tantamount to an instructed verdict. Appellants assert that they requested an affirmative instruction that the Justice Court case did not interrupt limitations.

Appellants have two problems to overcome with respect to the 5 year limitations claim. First, Appellants chose not to present any evidence on the status of the Justice Case, or the nature of the case, and in particular any claims of title as a defense to such suit, which they now argue is controlling. Moerbe offered, without objection, the Complaint in Forcible Detainer filed March 1, 2012. She established that she filed suit to recover the property. No other evidence was presented regarding that suit. Mr. Steinhauser testified that Appellants filed a general denial. As such, no issue of title was raised, at least not in the Justice Court. Appellants failed to present any evidence that the suit was abandoned, dismissed for want of prosecution, settled, or otherwise had not been prosecuted to a final judgment. They also failed to present any evidence that such suit involved title to the real property, and hence, if and when the Justice Court was determined

not to have jurisdiction. Without proof that the Justice/County Courts lost jurisdiction and when, there is no way for a jury to determine if limitations were ever interrupted, or started again. Appellants now assert that the Justice Court case was a nullity because they raised the issue of title as a defense and therefore as a matter of law the Justice Court was without jurisdiction. If that were so, there is no evidence in this record and any complaint about the adequacy of the Justice case has been waived. The Appellants cannot complain that the jury failed to find on evidence they did not present to the jury. It was Appellants' burden of proof, and they simply did not present any evidence on that issue, whatsoever. The jury verdict cannot be set aside on the basis of evidence never presented to the jury.

Appellants' second obstacle is that what they are asking for is basically a directed verdict, that a Justice Court Forcible Entry and Detainer case can never toll limitations as a matter of law. This would render meaningless the plain language of the limitations statutes, Tex. Civ. Prac. & Rem. Code §§16.025 and 16.026, and require an overly restrictive interpretation of the Justice Courts' core jurisdiction. **The Statutory Language**

The rule on adverse possession of real property under the ten (10) year limitations period is governed by the Texas Civil Practice & Remedies Code §16.026. (Effective September 1, 1985; Amended effective September 1, 1989, O'Connor's 2014). Section 16.026(a) provides:

A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

Likewise the five (5) year rule uses the same operative words: " a person must bring suit...to recover real property..."

No definition of a suit to recover real property is provided by the Texas Legislature so the words must be given their ordinary meaning. The word "title" is conspicuously absent from the statute and there is no reasonable basis to infer that the suit "to recover real property" must be a suit "to recover title to real property." Appellants have not provided this Appellate court or the trial court below with any case holding that a suit to recover "possession" of real property, an eviction suit, under Texas Rules of Civil Procedure, Rule 510.1 et seq, is not a suit to recover real property within the meaning of TCPRC §16.025 or §16.026. In fact, there seems to have been a change in the law broadening the definition of a suit that would interrupt "peaceable possession." The old cases refer to defined peaceable possession as "such possession as in continuous and not interrupted by adverse suit to recover the estate". *Barrett v. McKinney*, 93 S.W.2d 240, 242 (Court of Civ. Appeals, 1906). However, the language of the current statute is broader, merely requiring a "suit to recover real property". Again, no case can be found holding that a Justice Court forcible detainer suit does not interrupt limitations, and such should not be lightly inferred.

## The Existence of Jurisdiction

Property Code Chapter 24.001 provides a remedy to the legal owner of land to recover the real property possessed by a person who "enters the real property of another without legal authority and refuses to surrender possession on demand." Jurisdiction is vested in the Justice Court, with an appeal to the County Court, if desired. If the Defendant asserts an affirmative defense of title to the property, the Justice Court does not have jurisdiction to render judgment as to title. However, that does not mean that the Justice Court does not have any jurisdiction and that filing of the case was of no effect, as argued by Appellants.

Appellee acknowledges that the Texas Supreme Court in *Blaylock v. Riser*, 163 Tex. 235; 354 S. W. 2d 134 (1962) held that the County Courts (and Justice Courts) are "without power to try title to land and that this subject matter is exclusively within the jurisdiction of the District Court. *Blaylock*, 163 Tex. At 238. This does not mean the filing of the suit did not toll limitations. That Court also held that

> "A judgment may be void as to a severable portion over which the court has no jurisdiction and valid as to the portion remaining over which it does have jurisdiction."

*Id.* While the County Court did not have jurisdiction to determine the issue of title and could not award possession of real estate if at required determination of title, the Justice Court and County Court were not wholly devoid of jurisdiction. They

25

had jurisdiction to hear the simple eviction issue, and continues to do so, pending determination of the title issue by the District Court. Since these courts had jurisdiction the filing of the original Forcible Entry and Detainer suit was not a "complete nullity" as urged by Appellants. Since the suit was a valid suit to recover possession of real estate, it tolled limitations.

It is a well-established rule that a court has the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it does not have jurisdiction. *In re GMC*, 296 S. W. 3d 813 (Tex. App. – Austin, 2009, no pet.); citing *Royal Independent School Dist. V. Ragsdale*, 273 S. W. 3d 759, 763 (Tex. App. – Houston [14th Dist.] 2008, no pet.) Otherwise every order of dismissal entered by a court without jurisdiction would be void. *Id.* at 827. The Court of Criminal Appeals stated it succinctly, "Once jurisdiction is invoked, that jurisdiction embraces every thing in the case and every question arising which can be determined in the case, until it reaches its termination and the jurisdiction is thereby exhausted." *Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex. Cr. App. 1980). These cases make it clear that while a court may determine it does not have jurisdiction to determine an issue in a case, it has jurisdiction to make the jurisdictional determination. Until a court determines it lacks jurisdiction, the suit is a proper suit and, as here, tolls limitations. The actions of the parties and the court are not a nullity.

When the Forcible Entry and Detainer suit was filed to recover possession of the property in Justice Court, Appellee had no way of knowing title would be an issue. In fact, according to Mr. Steinhauser, who presented the only evidence on the issue contained in the record, it was not raised in the Justice Court but only on appeal to County Court. It seems absurd for Appellants to argue that such a suit, filed in good faith without notice of an adverse claim of title, and which proceeded to trial under a general denial, should be declared a complete nullity after the fact when Appellants/Defendants raised the issue of title in the appeal to County Court. That approach would be nothing short of "lying behind the log" to ambush an unsuspecting record title holder, and should not be condoned. Limitations should be interrupted by such suit, as here, at least until the jurisdictional issue is raised and determined. It has been said that all courts have inherent power to determine their own jurisdiction, and prior actions before them cannot be said to be a nullity as a matter of law.

The eviction process is, by design, simple and expedient and promotes the prompt resolution of the right to possession of real estate. Appellants would have this Court hold that their long-standing and accepted suit to recover possession of real property does not count as a suit to recover real property under the limitations statute. Such a holding would be a departure from existing law and practice, and would create a trap for the unwary who had no idea that a trespasser would assert a

27

claim of title which, under Appellants' view, should render the Justice suit a nullity ab initio. The better interpretation of law is that an eviction suit is a suit to recover real estate, subject to the requirements of any suit that it not be abandoned. Of course, such a suit that has been abandoned, dismissed for want of prosecution, settled, or otherwise not prosecuted to final judgment does not interrupt the running of the period of limitations. Texas Jurisprudence 3rd §72, citing *Chambers v. Shaw*, 23 Tex. 165, (1859), *Poole v. Gode*, 442 S. W. 2d 810 (Tex. Civ. App. – Houston [14th District] 1969, writ refused n. r. e. However, in this case it is undisputed that Appellee did not abandon, dismiss or fail to prosecute her suit to recover the property in Justice/County Court. She actively pursued the case until it was abated, pending the outcome of this action. It being still pending and this suit obviously having been prosecuted, there was no lapse which would have restarted limitations.

Again, Appellants have cited this Court to no case which says that filing a suit to recover possession of real property is not a suit to "recover real property" for purposes of suspending the running of limitations.

**Appellee's Response to Appellants' Point of Error Three, to-wit:**

**"The Court erred in failing to provide the jury with adequate and appropriate jury questions."**

Appellants have complained that the trial court erred by failing to give a requested instruction but point to no such instruction in their brief.

> "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." Tex. R. Civ. P. Rule 278.

Therefore, any such complaint has been waived. Appellants' brief mentions an instruction to the effect that the Justice Court suit did not interrupt limitations. For the reasons set forth in the argument and authorities above any such instruction would have been legally incorrect and improper.

## CONCLUSION

Appellant, Juana Valdez, repeatedly perjured herself with false testimony in records filed in the real property records, and testimony at trial. She also enlisted her friends to perjure themselves for her benefit as well. Likely, her friends had no idea what they were doing, but it is clear from the record that Juana Valdez did, and had a plan to try to take the Seeberger tract from Appellee, Melody Mueller Moerbe. When she learned of her encroachment, she didn't deal with it, she doubled down on her efforts to develop the Seeberger tract, and the tract that she

had actually purchased. There is no way the jury could find anything Juana Valdez said was "clear, direct, and positive with no circumstances tending to discredit or impeach such testimony". As such, none of her testimony is evidence to support her claims. Further, her admissions on cross further affirmatively show that she did not use the property for the required 10 year period. Appellant, Juan Valdez, Juana's husband, never testified.

Appellants' claim under the 5 year statute is predicated on a patently fraudulent deed, and the accompanying Affidavit of Use and Possession. Their attorney admitted that he fabricated the property description. The original deed from Ms. Gordon to Juana Mendez (Valdez) was a General Warranty Deed, but the attorney made the bogus deed a Deed Without Warranty, for obvious reasons. While no cases can be found on fraudulent deeds, only forged deeds, they seem of the same nature and Appellants should be estopped to claim under such a falsified deed.

However, Appellants limitation claims were "interrupted" by Mrs. Moerbe's suit to recover the property in Justice Court. She obtained a judgment for possession. The judgment in her favor was appealed to the County Court where Appellants decided to raise the issue of title. They had previously asserted only a general denial, and never raised an issue of the Justice Court's jurisdiction. The Appellants argue that the Justice suit was a nullity, but even if there was a question

of jurisdiction, the court had jurisdiction to hear that issue and make and order. In the interim, the court certainly had jurisdiction. There was no lapse between the Justice Court/appeal to County Court and the filing of this case. Limitations were therefore tolled by Appellee filing suit to recover possession of the real property in Justice Court. Appellants have argued that such suit did not toll limitations, but no Texas case has held that, and for good reason. It is in fact a suit to recover real estate. The statute does not require a suit to recover "title" to real estate and if that were the intention of the Legislature, they would certainly have said it. That appears to have been the law many years ago under different statutes, but the change in the language of the statute makes clear it is not a requirement. This should be obvious, given there are no cases holding to the contrary.

## PRAYER

Appellee, Melody Mueller Moerbe, prays that Appellants' points of error be denied, that the findings of the jury be sustained and the judgment of the trial court be affirmed in all aspects.

Respectfully submitted,

**GATES, STEIN, GILLESPIE & TREFNY**

By ____/s/____ Michael T. Trefny_____
MICHAEL T. TREFNY
SBN 20207650
P. O. Box 458
Columbus, Texas 78934
Telephone: (979) 732-2301
Facsimile: (979) 732-2303
Email: mtrefny@gsgtlawfirm.com

**ATTORNEYS FOR APPELLEE, MELODY MUELLER MOERBE**

## CERTIFICATE OF COMPLIANCE

Pursuant to TEXAS RULE OF APPELLATE PROCEDURE 9.4(i)(3), I hereby certify that Appellee's brief contains 8,151 words, as computed by the word processing program Microsoft Word, commencing with the Statement of Facts and, except for footnotes, is in Times New Roman font text, 14-point typeface.

_____/s/____ Michael T. Trefny_____
MICHAEL T. TREFNY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on Appellants, pursuant to the TEXAS RULES OF APPELLATE PROCEDURE on this 30th day of March, 2015, as follows:

E-filing through Pro-Doc, on OF JONES III, at ofjones360@gmail.com; and via certified mail return receipt requested at PO Drawer E, Victoria, Texas 77902.

_____/s/____ Michael T. Trefny_____
MICHAEL T. TREFNY